STATE OF NORTH CAROLINA v. DONALD GENE PHILLIPS AND MICHAEL JOEL PRESSLEY

No. 85

(Filed 12 July 1979)

1. Indictment and Warrant §§ 14, 15; Perjury § 1— inaccurate testimony before grand jury—no perjury—motion to dismiss indictment—timeliness

The trial court in a prosecution for arson did not err in denying defendants' motion to dismiss on the ground that the indictment against them was

State v. Phillips

based solely on the perjured testimony of the witness whose motel and residence were burned, since: (1) there was no evidence that perjury was actually committed, as assumptions made by the witness in his grand jury testimony did not amount to perjury but only to an unintentional misstatement of the facts and the accuracy of those assumptions was fully verified by another witness at trial; and (2) defendants' motion to dismiss the indictment, which was made at the conclusion of the evidence, was not timely. G.S. 15A-952(c).

2. **Grand Jury § 2— proceedings secret—cross-examination of witness improper**

Evidence elicited on cross-examination concerning an arson victim's grand jury appearance was not a proper subject for consideration on a motion to dismiss the indictment, since it is the policy of the State that grand jury proceedings should be secret. G.S. 15A-623(e).

3. **Criminal Law § 117.3— jury instructions—witness testifying under immunity**

Defendants had no standing to challenge either the propriety or the effectiveness of a grant of immunity to a witness testifying against them, since the privilege against self-incrimination is a personal one; furthermore, even if the grant of immunity in question were ineffective, defendants were not prejudiced by the court's instruction that the witness had been granted immunity and cautioning the jury to scrutinize his testimony with care before accepting it.

Justice BROCK took no part in the consideration or decision of this case.

APPEAL by defendants from the judgment of *(Harry C.) Martin, J.,* at the 24 April 1978 Session of HAYWOOD Superior Court, docketed and argued at the Fall Term 1978 as Case No. 107.

Defendants were tried and convicted of arson. Sentences of life imprisonment were imposed under N.C. Gen. Stat. § 14-58 (Cum. Supp. 1977), and both defendants appealed. Evidence for the State tended to show:

On 15 May 1977 Joe Bill Deyton and his wife were the owners of a motel located on Lake Santeetlah, one mile outside of Robbinsville, North Carolina. The complex which housed the motel also contained the Deytons' living quarters. Around 2:00 a.m. that morning, after waiting up for some late-arriving motel guests, Deyton went to his residence, where his wife, daughter, and niece were already asleep. As he sat at the kitchen table drinking a cup of coffee, he heard his dog barking and went outside to investigate. When he stepped out the front door he "heard something go shush-boom!" Glancing up, he saw that "the whole end of [the] motel porch was on fire." At the same time Deyton saw two men running from the direction of the motel. They were carrying what appeared to be a five-gallon gasoline can. By the

light of the fire and four motel floodlights he recognized the men as the defendants, Donald Gene Phillips and Michael Joel Pressley. He had known these two men "all of his life."

The bedroom of Deyton's daughter was directly under the motel porch which was on fire. He immediately ran back into the residence to awaken his family and get them out of the burning building. This accomplished, he directed his wife to call the fire department. He then ran back outside and tried unsuccessfully to put out the fire with a garden hose. While thus engaged he saw a white 1966 Chevrolet pass by the motel headed toward Robbinsville. This car was "similar" to the 1966 Chevrolet he knew to be owned by Richard Godfrey Phillips, the nephew of defendant Michael Phillips.

The fire department never responded to the call and the building was totally destroyed.

Richard Phillips, who was indicted for arson along with the defendants, testified for the State under a grant of immunity. His evidence, summarized except when quoted, tended to show:

Richard Phillips returned to Graham County on 20 April 1977 after having worked in Chicago for approximately thirteen weeks. Upon his return he set up a campsite on Massey Branch Road near Lake Santeetlah. From 20 April 1977 until May 15th, the morning of the fire, he lived there with several other persons, including defendant Michael Pressley.

On Saturday, May 14, Richard Phillips made several trips away from the campsite. On one of these trips, accompanied by the defendants Pressley and Donald Phillips, he drove to Cherokee County to purchase liquor. After consuming two fifths of whiskey they returned to the campsite around 4:00 p.m. Around 11:00 p.m. defendants and their companions decided to go to a party at Cheoah Point, ten miles north of Robbinsville. Everyone was "pretty drunk by this time." Richard Phillips was driving his own car, a white 1966 Chevrolet. He was accompanied by the defendants and by Tony and James Phillips. When they reached Cheoah Point, they failed to find the party and headed back toward Robbinsville. On the way they passed the motel owned by Joe Deyton and his wife.

As they drove by the motel, Richard Phillips said, "We ought to set some nails under his [Joe Deyton's] tires." After Richard Phillips made this remark, James Phillips said, "Let's just burn him out." The suggestions "seemed like the most popular thing to do and everybody said, okay, we'll do it." Richard Phillips explained that he had nothing personally against Mr. Deyton; that he just "wanted to do something evil."

The five men then returned to the campsite where they obtained a five-gallon gasoline can. After considering methods of destroying the motel, the group decided as a part of their plan to disable the fire trucks at the Robbinsville Fire Department. Both defendants participated in the discussion. All of them then proceeded in Richard Phillips' Chevrolet to the home of Susan Costerolos, where they siphoned gas out of a car parked in front of her trailer and told her of their intention "to burn up Joe Bill Deyton." Despite her pleas and efforts to dissuade them they left for the motel. En route they stopped at the Graham County Rescue Squad Building and disabled the two fire trucks they found inside by throwing away the keys and tearing out the distributor wires.

When the group reached the Deytons' motel, Richard Phillips drove the car slowly past the building to be sure no one was outside. He then parked beside a dumpster approximately a quarter of a mile away. Michael Pressley and Donald Philips left the car, gasoline in hand, and headed toward the motel, saying they "were going to burn that motel down."

A short time later defendants ran back to the car from the direction of the motel. At that time the "whole area was lit up" by the burning building. As they got in the car, Donald Phillips said, "[L]et's get out of here . . . it's a blazing." Richard Phillips drove for approximately a half mile with his headlights turned off and then returned with his passengers to the Costerolos trailer.

Defendants presented evidence tending to show that they were at the trailer at the time the fire began, and that they knew nothing about the motel being burned until someone came to the trailer and told them about it.

*Rufus L. Edmisten, Attorney General, and George J. Oliver, Assistant Attorney General, for the State.*

*Noland, Holt & Campbell by Edward Campbell for defendants.*

SHARP, Chief Justice.

**[1]** At the conclusion of the evidence defendants moved to dismiss the case on the grounds that the indictment against them was based solely on the perjured testimony of the State's witness Joe Bill Deyton. The trial court's denial of this motion constitutes defendants' first assignment of error. Whether an indictment would ever be subject to dismissal on the foregoing grounds and, if so, under what circumstances, is a question we need not now explore since (1) there is no evidence that perjury was actually committed and (2) defendants' motion to dismiss was untimely.

The sole witness before the grand jury was Joe Deyton, the arson victim. At the trial Deyton testified on direct examination that there were some "inaccuracies" in the statements he had made to the SBI agent who investigated the fire. He told the agent he saw defedants get into a 1966 Chevrolet which came by the motel after the fire began and that Dickie Phillips (Richard Godfrey Phillips) was the driver. Deyton explained that he had *assumed* Richard Phillips was the driver because Phillips had driven up to the store at Deyton's motel many times in just such a car; and that, although he thought he had seen him, he couldn't be sure. He also testified that he had assumed that the two defendants, both of whom he had seen running from the scene of the fire, were passengers in the car. On the morning of the trial Deyton told the district attorney about these assumptions and advised him that there would be a discrepancy between his trial testimony and his former statements.

Deyton admitted on cross-examination, over the State's objection,[1] that his testimony before the grand jury and at the preliminary hearing contained the same inaccuracies. He explained that his former testimony was based on assumptions he had

---

1. The admission of this testimony is not assigned as error and the question whether a witness's grand jury testimony is admissible to impeach his testimony at trial is not at issue here. *But see* N.C. Gen. Stat. § 15A-623(e) (1978) and § 11-11 (1969). *See also State v. Ivey,* --- La. ---, 307 So. 2d 587 (1975).

made at the time of the fire, and that he reported those assumptions as fact because "he was so upset and so tore up" by the shock of his family's narrow escape from death and the loss of his home and possessions.

These facts fall far short of establishing perjury. The common law definition of perjury is "a false statement under oath, knowingly, willfully and designedly made in a proceeding in a court of competent jurisdiction . . . as to some matter material to the issue or point in question." *State v. Lucas*, 244 N.C. 53, 54-55, 92 S.E. 2d 401, 402 (1956). There is nothing in Deyton's testimony which suggests that the inaccuracies in his grand jury testimony were wilfull or designedly made. An unintentional misstatement of the facts is not perjurious.

Furthermore, we note that Richard Phillips' testimony at trial fully verified the accuracy of Deyton's assumptions. Phillips swore that he was in fact the driver of the car Deyton saw and that the two defendants did indeed get into the car after the fire began.

We also note that Deyton testified, both at trial and before the grand jury, that he saw two men running away from the fire carrying a gasoline can and recognized them as the defendants. This testimony, standing alone, provided ample cause for the grand jury to believe defendants were involved in the arson.

[2]  Finally, we call attention to the public policy of this State against allowing a defendant to cross-examine the witnesses before the grand jury in order to show the nature and character of the evidence upon which the bill of indictment was founded. *State v. Blanton*, 227 N.C. 517, 523-24, 42 S.E. 2d 663, 667 (1947). This policy is now codified in G.S. 15A-623(e) which states that "Grand jury proceedings are secret and, except as expressly provided in this Article, members of the grand jury and all persons present during its sessions shall keep its secrets." *See also* G.S. 11-11. We agree with the trial judge that the evidence elicited on cross-examination concerning Deyton's grand jury appearance was not a proper subject for consideration on a motion to dismiss the indictment.

[1]  Under G.S. 15A-952(c) a motion to dismiss the indictment pursuant to G.S. 15A-955 "must be made at or before the time of ar-

raignment if arraignment is held prior to the session of court for which the trial is calendared." If arraignment is held during the session, the motion must be filed "on or before five o'clock p.m. on the Wednesday prior to the session when trial of the case begins." A failure to make the motion in apt time constitutes a "waiver." G.S. 15A-952(e). The trial judge, however, has the power to "grant relief from any waiver except failure to move to dismiss for improper venue." *Id.*

Other than specifying arraignment as the proper time for making the motion, these statutory rules substantially follow common-law practice. Under the common law of this State a motion to quash the indictment could be made as of right only up to the time the defendant entered his plea. Thereafter, the motion was addressed to the sound discretion of the trial judge. *State v. Colson,* 262 N.C. 506, 138 S.E. 2d 121 (1964). *See also, State v. Ballenger,* 247 N.C. 260, 100 S.E. 2d 845 (1957); *State v. Suddreth,* 223 N.C. 610, 27 S.E. 2d 623 (1943); *State v. Burnett,* 142 N.C. 577, 55 S.E. 72 (1906); *State v. Eason,* 70 N.C. 88, 90 (1874).

Defendants' motion to dismiss came at the conclusion of the evidence. Under either common-law practice or G.S. 15A-952, the motion was untimely and was therefore addressed to the discretion of the trial judge. *State v. Ballenger,* supra; *State v. Suddreth,* supra; G.S. 15A-952(e). His exercise of that discretion in refusing to hear the motion is not reviewable on appeal. *State v. Colson,* supra; *State v. Ballenger,* supra.

[3] In their second assignment of error defendants argue that the trial court erred in charging the jury that Richard Godfrey Phillips had testified under a grant of immunity. Defendants contend that the order dated April 24, 1978, granting immunity was ineffective because Phillips never formally asserted his privilege against self-incrimination as required by G.S. 15A-1051(b).

Because the privilege against self-incrimination is a personal one[2], the short answer to defendants' second assignment is simply that they have no standing to challenge either the propriety or the effectiveness of a grant of immunity to a witness testifying against them. *United States v. Braasch,* 505 F. 2d 139 (7th Cir.

---

2. *See, e.g., State v. Morgan,* 133 N.C. 743, 45 S.E. 1033 (1903); *State v. Smith,* 13 N.C. App. 46, 184 S.E. 2d 906 (1971).

---

State v. Phillips

---

1974); *United States v. Lewis,* 456 F. 2d 404 (3d Cir. 1972); *Lopez v. Burke,* 413 F. 2d 992 (7th Cir. 1969); *Commonwealth v. Simpson,* 370 Mass. 119, 345 N.E. 2d 899 (1976); *State v. Reed,* 127 Vt. 532, 253 A. 2d 227 (1969). Furthermore, even if the grant of immunity were ineffective and the judge's charge therefore superfluous, we fail to see how defendants could be prejudiced by an instruction telling the jury that Richard Phillips had been granted immunity and cautioning the jury to "scan and scrutinize [his] testimony with care before accepting it."

Upon oral argument defendants expressly abandoned their two final assignments of error: (1) that the trial judge erred in granting a change of venue (a move they themselves requested), and (2) that they were denied the effective assistance of counsel. Notwithstanding, we have examined both of these assignments and find no merit in either.

Our careful review of the record discloses a trial free from prejudicial error.

No error.

Justice BROCK took no part in the consideration or decision of this case.