[No. G006382. Fourth Dist., Div. Three. Sept. 28, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE RAY WISELY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I through VII, IX, X, XII and XIII.

940

COUNSEL

Larson & Weinberg, Doron Weinberg and Nina Wilder for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Robert M. Foster and Carl H. Horst, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WALLIN, Acting P. J.**—Willie Ray Wisely appeals his conviction for murder with the special circumstance of lying in wait. He urges reversal, contending: (1) the evidence was insufficient to support the murder conviction; (2) the evidence was insufficient to support a finding of lying in wait; (3) the prosecution wrongfully destroyed a critical piece of evidence; (4) the prosecutor was guilty of prejudicial misconduct during trial; (5) the prosecution knowingly allowed false evidence at the trial; (6) the prosecution withheld valuable information from the defense; (7) a reporter was improperly allowed to invoke the shield law; (8) the testimony of a witness was improperly compelled; (9) inadmissible prejudicial hearsay was admitted; (10) the trial court committed multiple prejudicial instructional error; (11) prejudicial juror misconduct occurred; (12) Wisely's Sixth Amendment and due process rights were violated regarding his motion for new trial; and (13)

Wisely was inadequately advised of the dangers of self-representation and was unable to properly represent himself because of mistreatment at the jail. In the published portion of the opinion, we reject Wisely's eighth and eleventh contentions. In the unpublished portion, we reject his remaining contentions and affirm.

Wisely's stepfather, Robert Bray, was killed in March 1981 when the cab of his truck fell on him while he was working on it. Although no one saw the entire incident, several witnesses pieced the event together. One witness saw a gray panel or pickup truck double parked next to Bray's rig. She saw a younger man in the panel or pickup truck give what appeared to be a tool box to a man fitting Bray's description. She did not see Wisely. Another witness saw a flash of light and a pair of legs and the soles of a man's shoes flying in the air. Yet another witness saw Bray's slumped body stuck underneath the cab of the truck.

The cause of death was asphyxiation due to pressure on the chest area. Except for impressions from the cab there were no significant bruises, abrasions, fractures, or other marks on Bray's body, including puncture marks. There were no drugs found in his system besides alcohol, caffeine and nicotine.

No evidence was found that the hydraulic cab-lift mechanism on Bray's rig had been tampered with. The device was designed to stop at irregular checkpoints unless bypassed. Because of a fluid leak, the device did not work properly. Lowering the cab was a slow and intricate process, although by hitting the hydraulic jack, the cab would fall straight down without stopping. There was testimony that when lowered the cab made a noise which would alert anyone that the cab was descending on them.

Originally, the authorities concluded that the death had been an accident. A few weeks later, Philip Thompson, seeking to curry favor with the police and believing that Wisely had informed on him in another matter, told the Burlingame police that Wisely and James Dunagan had committed the murder. Wisely hated his stepfather and had been involved in a physical altercation with him. He had solicited others to kill Bray.

Dunagan testified that he and Wisely got together on the day of the crime planning to watch, but not to kill him. They drove to the location of Bray's truck in a gray panel truck which Wisely had borrowed. Wisely brought a handgun and a hypodermic needle for injecting poison. The two then argued as to who should inject Bray with poison while Bray worked on the truck.

Wisely decided to do the job himself. He went over to the truck, out of Dunagan's view, and then reappeared after Dunagan saw the cab moving. On Wisely's instructions, Dunagan drove by the truck; Wisely got out and reported that Bray was dead. Dunagan could only see Bray's legs. After the deed was done, Dunagan and Wisely drove to the house of a friend, where they stayed until Wisely's girlfriend arrived and told them Bray was dead.

Richard Kish and John Randolph testified that Wisely had admitted the murder to them. Although Philip Thompson denied at trial that Wisely had admitted the killing to him, his prior statements that Wisely had done so were admitted.

Wisely testified that on the day of Bray's death, he left his girlfriend's house to visit Dunagan at Bat Masterson's house. They stayed there for about an hour and then spent the remainder of the afternoon trying to sell some jewelry at various locations. They returned to Masterson's house and freebased cocaine. About dusk, Wisely's girlfriend arrived and told him that his stepfather was dead. Wisely testified he was shocked by the death and that he had nothing to do with it.

### I-VII*

· · · · · · · · · · · · · · · · · · ·

### VIII

Wisely asserts the trial court erred by granting witness Philip Thompson use immunity. He argues that in California only transactional immunity can be granted. (*People* v. *Campbell* (1982) 137 Cal.App.3d 867, 874-876 [187 Cal.Rptr. 340].) Two procedural issues are fatal to his argument.

■ First, he failed to object to the grant of immunity in the trial court and may not raise it here. (*People* v. *Harris* [(1981)] 28 Cal.3d [935,] 962 [171 Cal.Rptr. 679, 623 P.2d 240].) ■ Second, he lacks standing to challenge Thompson's immunity. Federal law and cases in other states consistently hold that a defendant "has no standing to argue that the testimony of . . . [an] immunized witness [is] the product of improper grants of immunity." (*Commonwealth* v. *Simpson* (1976) 370 Mass. 119 [345 N.E.2d 899, 902; see also *United States* v. *Ellis* (3d Cir. 1979) 595 F.2d 154, 163; *United States* v. *Hathaway* (1st Cir. 1975) 534 F.2d 386, 402; *United States* v. *Foster* (7th Cir. 1973) 478 F.2d 1001, 1003-1004; *United States* v.

---

* See footnote, *ante*, page 939.

*Braasch* (7th Cir. 1974) 505 F.2d 139, 146; *State* v. *Melvin* (Me. 1978) 390 A.2d 1024, 1029; *State* v. *Kingbird* (Minn. 1987) 412 N.W.2d 350, 354; *State* v. *Phillips* (1979) 297 N.C. 600 [256 S.E.2d 212, 216]; *State* v. *Ahmadjian* (R.I. 1981) 438 A.2d 1070, 1078-1079; *State* v. *Morgison* (1971) 5 Wn.Ct.App. 248 [486 P.2d 1115, 1116-1117].)

We adopt that general rule. The privilege against self-incrimination is personal to the person who invokes it and immunity affects only that person. Unless the immunity amounts to an improper coercion of the witness's testimony or demonstrably affects the nature of that testimony, the defendant has no interest in complaining. (See *People* v. *Medina* (1974) 41 Cal.App.3d 438, 450 [116 Cal.Rptr. 133] [immunity conditioned on particular testimony]; accord *People* v. *Allen* (1986) 42 Cal.3d 1222, 1251 fn. 5 [232 Cal.Rptr. 849, 729 P.2d 115].)

Here, there is no claim or showing that the grant of immunity adversely affected the veracity of Thompson's testimony "against" Wisely. He denied any recollection of having made inculpatory statements against Wisely and said he was lying to the police in his prior statements. There is no reason to give Wisely the opportunity to contest the grant of immunity.

## IX, X*

. . . . . . . . . . . . . . . . . . . . . .

## XI

Wisely asserts juror misconduct and reception of unauthorized evidence at a jury view of the death scene merit reversal. He predicates his claim on three alleged instances: (1) the jurors observed demonstrations of the cab-lift mechanism; (2) they had their questions answered by the prosecutor and witnesses about the operation of the mechanism; and (3) they performed experiments to determine whether Bray could have accidentally reached the selector switch. The trial court did not abuse its discretion in finding no misconduct occurred on the first two grounds and that Wisely acquiesced in what transpired at the scene. As to the last ground, Wisely failed to raise the issue in a timely manner and to make an adequate preliminary showing to merit relief.

During the trial, Wisely requested a jury view of the death scene with a truck like Bray's and a panel truck similar to the one about which Dunagan

---

*See footnote, *ante*, page 939.

testified placed according to the testimony. Wisely wanted to show that Dunagan was lying because he could not possibly have seen what he said he did from his vantage point. Although he initially talked about having demonstrations done with the truck cab, Wisely stated later he was only interested in Dunagan's vantage point and the foot traffic in the area, and because the lift system had been altered, he was not interested in a demonstration or taking of testimony. He never specifically objected to any such demonstration.

Before the jury view, the court admonished the jury that they were not to ask questions or talk at the scene. After the view, Wisely complained that the truck which was used was significantly different from Bray's and asked for another view using Bray's. The court agreed, and before the second view, told the jury to follow instructions at the scene and not to discuss the case among themselves or with anyone else.

Although the proceedings at the second jury view were not reported, the trial court issued a settled statement of certain facts as part of Wisely's initial motion for new trial.[17] At that time, the focus of Wisely's misconduct claim was on the cab tilt demonstrations. The statement established: "Based upon the evidence adduced at the hearings conducted on October 28, 1982, November 2, 1982, and November 17, 1982, the Court makes its findings and statement of evidence relating to the proceedings of February 2, 1982, as follows: [¶] 1. The jury, accompanied by the bailiff, the prosecutor, the defendant, the Court, William Gunter, John Muse, Richard Hooper, William Wine, Daye Shinn, Allen Ung, Roger Jennings, Doug Payne and Sgt. Clemens were present at Springdale Street and Edinger Avenue during mid-afternoon of February 2, 1982. There were, in addition, other persons present who did not participate in the activities. [¶] 2. The semi-trailer, the cab of which had descended upon and caused the death of Robert Bray, was present parked in a position closely approximating that in which it had been at the time of Mr. Bray's death as shown in earlier evidence. [¶] 3. An initial direction, shortly prior to the view, was given by the defendant through Mr. Payne to Mr. Muse to raise the cab to 30 [degrees]-45 [degrees]. [¶] 4. The cab was raised and lowered at least five, and possibly more, times. [¶] 5. The defendant did not give any directions to Mr. Muse as to lowering the cab. [¶] 6. On each occasion that the cab was caused to descend it did so in a continuous movement, with no intermediate stops. [¶] 7. Mr. Muse was

---

[17] After the verdicts of guilt and death, Wisely made a motion for new trial, which was denied as to the guilt phase but granted as to the penalty phase. On appeal we upheld the granting of the motion as to penalty; upon remand the prosecution abandoned the death penalty. (*People* v. *Wisely* (Jan. 24, 1986) G000749 [nonpub. opn.].) Wisely moved for leave to renew his motion for new trial as to the issue of guilt, and that motion was granted.

asked a couple of questions by the jury during the demonstration. It is not known what the questions were."

At the next session of the hearing, the court denied part of Wisely's new trial motion. At a later session, Wisely sought to present the testimony of four of the jurors on the issue of unauthorized questions and answers at the second jury view, and the court granted him leave to do so.[18] Two of the jurors testified that Wisely not only was present for the question and answer session, he actually authorized which questions could be answered and which could not. Wisely did not rebut these statements.

In denying the new trial motion on the grounds of juror misconduct, the trial court found: "Based upon the evidence which has been produced during the various hearings, including the testimony of Mr. Muse, which the latter part of last year was taken, and the testimony of Mr. Gunther [sic], the testimony of the four witnesses who testified yesterday, there appears to the court to have been some questions which were asked at the scene of the view. [¶] The evidence to the court indicates that those questions related solely to the issue of where certain things were. That is, the lever, the plate, things such as that. It further appears to the court that these questions, based on the evidence, were relayed through the district attorney and the defendant for clearance as to their being asked, and prior to their being asked. [¶] The court believes that there was nothing untoward which occurred. The defendant was present. He was fully cognizant of what took place at the scene. And the court believes that there is no showing of anything improper occurring at the scene of the view. [¶] The court finds that there was a total waiver by the defendant of all activities—waiver and concurrence of all activities which occurred out at the scene. The motion for a new trial as to the guilt phase is denied."

At Wisely's second motion for new trial, he submitted declarations from the same four jurors who had testified previously. The gist of those declarations was that some jurors had lain across the battery box of Bray's truck and attempted to reach the cab-lift selector switch, concluding it could not be done accidentally. Wisely submitted his own declaration claiming he "was absent during portions of both [jury] views during which the jury took unauthorized evidence." While arguing the motion, he expressly and

---

[18] At this session, the court stated it had previously denied the new trial motion on all guilt phase issues. However, the record reflects that at the prior session, the court did not specifically rule on the jury misconduct issue, only expressly mentioned other issues, and deferred all remaining issues. Thus, the court was correct, albeit for the wrong reason, in allowing Wisely leave to present further evidence on the topic at the first motion. The court had the discretion to allow Wisely to present juror testimony. (*People* v. *Hedgecock* (1990) 51 Cal.3d 395 [272 Cal.Rptr. 803, 795 P.2d 1260].)

inferentially asserted numerous times that he had been unaware of the question and answer session at the jury view, saying the demonstration had started before he arrived at the scene. The prosecutor protested that the issue had been fully litigated in the first new trial motion. The trial court denied the second motion for new trial without comment on the juror misconduct issue.

■ A motion for new trial may be made on the grounds of juror misconduct or unauthorized receipt of evidence by the jury. (Pen. Code, § 1181, subds. 2 and 3.) "It is the trial court's function to resolve conflicts in the evidence, to assess the credibility of the declarants, and to evaluate the prejudicial effect of the alleged misconduct . . . . However, in reviewing an order *denying* a motion for new trial based on jury misconduct, as distinguished from an order *granting* a new trial on that ground, a reviewing court has a constitutional obligation (Cal. Const., art. VI, § 13) to review the entire record, including the evidence, and to determine independently whether the act of misconduct, if it occurred, prevented the complaining party from having a fair trial. [Citations.]" (*Andrews* v. *County of Orange* (1982) 130 Cal.App.3d 944, 954-955 [182 Cal.Rptr. 176].)

■ We have reviewed the record and concur with the trial court that, so far as is cognizable on appeal, no juror misconduct occurred and the jury did not receive unauthorized evidence. Contrary to his assertions, Wisely never objected before the fact to any demonstration of the cab-tilt system; he only stated he was not *requesting* such a demonstration. His claim in a letter to the trial court shortly after the second view that he had objected at the scene to the demonstration and question and answer period is belied by the testimony of the jurors at the motion for new trial *as well as Wisely's own testimony* there. Two of the jurors testified without rebuttal by Wisely that he actually approved of the questions which were answered at the scene. Wisely testified that he did not object at the scene to the demonstration because he thought he had previously objected on the record.[19]

In *People* v. *McIntyre* (1981) 115 Cal.App.3d 899 [176 Cal.Rptr. 3], Division One of this court held the defendant waived his right to claim juror misconduct by failing to make a contemporaneous objection, even though he had made a premature objection earlier. The court pointed out that an objection at the time would have given the court a chance to cure the problem or grant an immediate mistrial. (*Id.* at p. 906.) A contemporaneous

---

[19] Wisely complains that he made prior objections which the court would not allow on the record. As we discuss, this contention is irrelevant because a *contemporaneous* objection to the alleged misconduct is required.

objection here would have alerted the court to the issue and allowed for an immediate inquiry and a possible remedy.[20]

As it is, the record does not show misconduct by the jury or that they received any unauthorized evidence by way of demonstration or questions and answers. Further, we find, as did the trial court, that Wisely fully acquiesced in the proceedings at the scene.

Wisely's claim that the jurors performed unauthorized experiments also suffers from his failure to object at the scene. (*People* v. *McIntyre, supra*, 115 Cal.App.3d at p. 906; see also *People* v. *Sanchez* (1965) 232 Cal.App.2d 812, 819 [43 Cal.Rptr. 131] [defendant must aver he had no knowledge of misconduct at the time it occurred].) He also faces an additional hurdle—he failed to raise that issue in his first motion for new trial.

In *People* v. *Stewart* (1988) 202 Cal.App.3d 759 [248 Cal.Rptr. 907], we held the trial court had jurisdiction to entertain a second new trial motion which attacked the competency of trial counsel who had conducted the first motion. In doing so, we recognized the general rule that "once a trial court has decided a new trial motion, it may not reconsider its ruling or entertain subsequent requests for new trial," recognizing "that, otherwise, proceedings on new trial motions might 'become interminable.' [Citation.]" (*Id.* at pp. 761-762.) Although we held the general rule is not jurisdictional, "it directs [trial courts] to avoid extended new trial proceedings where possible, subject to reasonable exceptions in the interests of justice." (*Id.* at p. 763.)[21]

■ A corollary of our reasoning in *Stewart* is that a second new trial motion may be properly denied when the defendant raises an issue previously litigated without showing it is based upon new law or facts which the defendant did not know, and could not have known, at the time of the original motion. (Compare, e.g., *People* v. *Risenhoover* (1966) 240 Cal.App.2d 233, 234-236 [49 Cal.Rptr. 526] [second new trial motion based upon subsequent evolution of case law].)

Wisely urges in his reply brief that the questions and answers and the juror experiments "fall within the ambit of newly discovered evidence . . . [and are] not subject to the contemporaneous objection rule." This

---

[20] For example, Wisely complains that the jury could have been misled by the demonstration into believing that the cab lowered in one smooth movement at the time of Bray's death when it only did so *after* it had been reassembled. If a timely objection had been made, any misapprehension by the jury could have been cleared up.

[21] Because of the facts of this case and our resolution of the issue, it is not necessary to discuss the assertion in *People* v. *Snyder* (1990) 218 Cal.App.3d 480 [266 Cal.Rptr. 915] that the rule is jurisdictional and that court's consequential disagreement with our reasoning in *Stewart*.

argument is disingenuous. Wisely and his juror witnesses impeach his claim and his credibility in numerous ways as to the question and answer session at the jury view. Wisely's letter to the trial judge two days after the jury view states he was aware of the questions and answers. The juror's unrebutted testimony was that he participated actively in screening them. Yet, in his declaration in support of his second motion for new trial, Wisely swore under penalty of perjury that he "was absent during portions of both views during which the jury took evidence." And, he repeatedly stated in argument he did not know what was asked and answered.[22]

From these dire inconsistencies, the trial court could easily surmise Wisely was not truthful when he averred he was not aware of the questions and answers or the juror experiments. We conclude this was the case in our independent review of the record. And, even if Wisely was not aware of the juror experimentation as it occurred, he *should have* gained that information when interviewing the declarant jurors before their testimony at the first motion and presented it at that time. He was not entitled to raise the experimentation issue at the second new trial motion and may not raise it here.

### XII, XIII*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

The judgment is affirmed.

Sonenshine, J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 4, 1991.

---

[22] For example, "I don't know what was asked. I don't know who asked it. I don't know what was answered. I can't object."

*See footnote, *ante*, page 939.