STATE OF NORTH CAROLINA v. WILLIE MINTER

No. 9118SC1199

(Filed 20 July 1993)

1. **Indictment, Information, and Criminal Pleadings § 6 (NCI4th) — perjured testimony before grand jury — other competent evidence — indictment not invalid**

Assuming *arguendo* that the grand jury testimony of a co-conspirator was perjured and that this would render the witness incompetent to testify within the meaning of N.C.G.S. § 15A-955(3), the trial court properly refused to dismiss the indictment where the record failed to show that all of the witnesses were incompetent to testify before the grand jury. Furthermore, defendant's motion at trial to dismiss the indictment was not timely.

**Am Jur 2d, Indictments and Informations §§ 232, 234.**

2. **Conspiracy § 40 (NCI4th) — agreement with "one other person" — erroneous instruction**

The trial court erred by instructing the jury that it could find defendant guilty of conspiracy to traffic in cocaine "if defendant agreed with one other person" rather than limiting the conspiracy to one with the co-conspirator named in the indictment where the evidence tended to show that defendant may have conspired with a number of persons to commit an unlawful act, since the instruction put defendant on trial for an offense in addition to that named in the indictment.

**Am Jur 2d, Trial § 1142.**

3. **Evidence and Witnesses § 3072 (NCI4th) — hostile witness — prior grand jury testimony — use for impeachment**

Once a hostile State's witness refused to testify or claimed that parts of his earlier, sworn statements before the grand jury were false, the State could properly use his grand jury testimony for the limited purpose of impeachment. The prosecutor's introduction of the witness's grand jury testimony during his cross-examination of the witness was not a mere subterfuge to get before the jury evidence not otherwise admissible.

**Am Jur 2d, Witnesses § 941.**

STATE v. MINTER

[111 N.C. App. 40 (1993)]

**Mode of proof of testimony given at former examination, hearing or trial. 11 ALR2d 30.**

Judge GREENE concurring in the result.

Appeal by defendant from judgment entered 26 June 1991 in Guilford County Superior Court by Judge W. Douglas Albright. Heard in the Court of Appeals 1 March 1993.

A Guilford County grand jury indicted defendant for conspiracy to commit trafficking in cocaine by the sale and delivery of more than 400 grams of cocaine. A jury convicted him of conspiracy to sell and deliver cocaine, a Class H felony under N.C. Gen. Stat. § 90-95 (Supp. 1992), for which he received a sentence of eight-years imprisonment.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Grayson G. Kelley, for the State.*

*Assistant Public Defender John Bryson for defendant-appellant.*

McCRODDEN, Judge.

We review three questions based upon three assignments of error brought forward by defendant: (I) whether the trial court committed prejudicial error by failing to dismiss the indictment that was allegedly based on perjured testimony; (II) whether the court erred in its instructions that the jury could find defendant guilty of conspiracy by finding an agreement between him and at least one other person, without identifying specifically the co-conspirator named in the indictment; and (III) whether the court erred in allowing the State to introduce evidence of allegedly per-jurious grand jury testimony of defendant's co-conspirator.

I.

[1] Defendant's first argument is that the trial court erred in denying his motion to dismiss the indictment on the grounds that it was based upon allegedly perjured testimony. On motion of the defendant, the trial court may dismiss an indictment if it determines that:

(1) There is ground for a challenge to the array,

(2) The requisite number of qualified grand jurors did not concur in finding the indictment, or

(3) All of the witnesses before the grand jury on the bill of indictment were incompetent to testify.

N.C. Gen. Stat. § 15A-955 (1988). Assuming *arguendo* that the testimony was perjured and that it would render a grand jury witness incompetent to testify within the meaning of subsection (3), we cannot say, based upon the record before us, that this satisfies the requirement that "*all* of the witnesses" were incompetent to testify before the grand jury.

Furthermore, defendant's reliance on *United States v. Basurto*, 497 F.2d 781, 785 (1974), for the proposition that the prosecutor has a duty "not to permit a person to stand trial when he knows that perjury permeates the indictment" is subject to the same problem. Without knowing what other evidence was before the grand jury, we cannot determine whether perjury permeated the indictment.

Finally, we also reject defendant's argument on the basis that his motion to dismiss the indictment, made at trial, was not timely. *See* N.C. Gen. Stat. §§ 15A-952(b)(4) (Supp. 1992), 15A-955 (1988); *State v. Phillips*, 297 N.C. 600, 605-06, 256 S.E.2d 212, 215 (1979).

## II.

[2] Defendant's argument that the trial court erred in instructing the jury that they could find the defendant guilty of conspiracy without limiting the conspiracy to one with the co-conspirator (Branch) named in the indictment has merit.

The instruction about which defendant complains included a statement that, "if you find from the evidence and beyond a reasonable doubt that on or about the alleged date that the defendant agreed with at least *one other person* . . . [to commit the offense] and that the defendant and at least *one other person* intended at the time the agreement was made that it would be carried out, then it would be your duty to return a verdict of guilty . . . ." (Emphasis added). The trial court used this language to instruct the jury on the offense for which defendant was indicted and on the lesser included offense for which defendant was convicted.

The North Carolina Constitution provides that "in all criminal prosecutions every man has the right to be informed of the accusation" against him. N.C. Const. Art. I, sec. 23. In *State v. Mickey*, 207 N.C. 608, 178 S.E. 220 (1935), the Supreme Court dealt with

STATE v. MINTER

[111 N.C. App. 40 (1993)]

a similar situation in which the defendant was indicted for conspiracy with two named co-conspirators to commit murder. In its charge, the trial court instructed the jury that it might find the defendant guilty if it found that he had conspired with both co-conspirators or others. The Supreme Court held that this charge put the defendant on trial for an offense additional to that named in the bill of indictment and ordered a new trial.

We believe that this case controls our decision. The evidence in this case, as in *Mickey*, tends to show that defendant may have conspired with a number of persons, not just the named co-conspirator, to commit an unlawful act. Consistent with *Mickey*, this Court has also examined the charge as a whole to determine whether the error was cured. We cannot find that it was. Consequently, we must order a new trial.

Finally, because one of the additional issues brought forward by defendant is likely to be raised at his second trial, we must address it in this opinion.

III.

[3] Defendant assigns error to the trial court's allowing the State to introduce, for impeachment purposes, the grand jury testimony of the alleged co-conspirator, Branch. The record reflects that on the day before trial Branch stated his intention not to testify at the trial. Prior to Branch's testimony before the jury, the trial court allowed a *voir dire* examination of Branch, and we quote from the prosecutor's examination the following excerpt:

Q. . . . [W]hat did you tell . . . [defendant's attorney]?

A. I told him that detective had seen me, had brought me in an office up here, and he was trying to make some kind of deals with me about early release from prison if I would testify against Minter.

Q. And what did you tell him?

A. I told him I couldn't do anything like that because I don't know really what they talking about and I already have my time. You know. That's a relative of mine. I couldn't testify against him.

Q. And you told . . . [defendant's attorney] that yesterday?

A. Yes.

**STATE v. MINTER**

[111 N.C. App. 40 (1993)]

Q. You couldn't testify against him?

A. Yes.

Q. And is that your position now? You're not going to testify against him?

A. No, sir, I'm not.

. . . .

Q. . . . Are you going to tell the truth about your dealings with Mr. Minter back here in 1989 and '90?

A. Yes, I am.

Q. Is that the same thing you told the grand jury?

A. Yes.

Whatever you-all got on that document from the last time I was here in the grand jury, like you read it to me yesterday, all of it is not correct.

Q. What you're saying is that what you told the grand jury wasn't correct?

A. Not most of it.

Q. Most of it is not correct?

A. No, it's not.

Q. You mean you lied to the grand jury?

A. No. I didn't lie to them.

Q. Well, what happened? It was taken down wrong?

A. I believe so.

Shortly after this questioning, the trial judge interrupted to advise Branch about perjury and to appoint an attorney to represent him.

During Branch's testimony in the presence of the jury, Branch initially claimed that he could not "recall right offhand" if he told Detective Pendergrass that he had brought defendant to North Carolina to help him sell drugs. He did, however, deny making such a statement before the grand jury. After defense counsel's objection to the prosecutor's questions about his prior testimony

STATE v. MINTER

[111 N.C. App. 40 (1993)]

that defendant shot another man over drugs, Branch stated, "I'll be willing to accept the facts and the punishment for false perjury. May I step down?" At the prosecutor's request, the trial court declared Branch an adverse witness.

To many of the later questions concerning his testimony about defendant before the grand jury, Branch responded "[f]alse testimony." Over defendant's objections, the prosecutor was able to recapitulate most of Branch's grand jury testimony through this questioning. The trial court later allowed the introduction of that portion of the grand jury transcript that recorded Branch's earlier testimony.

After the close of the evidence, and with the jury excused from the courtroom, Branch pleaded guilty to perjury. During the acceptance of his plea, the trial court asked Branch if there was anything he wanted to say, and Branch responded:

DEFENDANT BRANCH: Yes. It wasn't no lie.

THE COURT: What do you mean it wasn't any lie? You said it was a lie?

DEFENDANT BRANCH: I'm saying, you don't know the whole facts. That's all I'm going to say.

THE COURT: Oh. Well, what are you talking about? I don't understand what you're getting at? Stand up so I can understand you better.

DEFENDANT BRANCH: See, it wasn't no lie.

THE COURT: What are you talking about? I don't understand?

DEFENDANT BRANCH: That you just made your comment on. I told a lie.

THE COURT: Yes. You said you did.

DEFENDANT BRANCH: It wasn't no lie.

THE COURT: I'm just going by what you said yesterday under oath.

DEFENDANT BRANCH: You don't know—what I'm trying to express to you, you don't know the situation and the whole facts. The situation, the predicament that I am in.

STATE v. MINTER

[111 N.C. App. 40 (1993)]

THE COURT: Well, I've got an open ear. I'll hear whatever you want to tell me.

DEFENDANT BRANCH: That's it.

THE COURT: . . . .

Now you went before the grand jury under oath. At the time, as I understand it, you were in prison then; is that right?

DEFENDANT BRANCH: Yes.

THE COURT: And you took the oath to tell the truth and gave testimony. Yesterday, you took the oath and gave testimony. Of which you affirmed a notion that you gave false testimony before the grand jury is what you said.

DEFENDANT BRANCH: See, when I came here in front of the grand jury, I wasn't notified that—who I was coming here before the grand jury. I was coming here for what I know of Richardson. I didn't know I was coming for Minter.

THE COURT: In other words, you tell it one way for Richardson and another way for Minter?

DEFENDANT BRANCH: No, I didn't. They asked me a few questions and I told them what I, you know—I told them what dealings I had with Richardson. I didn't know I was supposed to come to court here to be no state witness. Work for no state. It wasn't no charges brought up on me.

THE COURT: Well, you got one now. Which is totally self-inflicted. You worked hard to earn this charge and about as clearcut case as I've seen lately. Just worked your way right into it. I tried to warn you about the law. You had a lawyer appointed to tell you how important it is to tell the truth. If I didn't know the difference, I'd put money on the table saying that you are protecting somebody. Something has happened to you as a witness.

DEFENDANT BRANCH: I'm protecting my family.

THE COURT: Well, there's something going on here that's changed you around. And I'd like to know who it is that you are relying on to change your testimony. You're not going to tell me that, are you?

DEFENDANT BRANCH: My family.

THE COURT: Has somebody threatened you?

DEFENDANT BRANCH: Yes.

THE COURT: Has somebody told you to change your testimony?

DEFENDANT BRANCH: In a way. Yes. It have not been Minter. Have not been Richardson. I was threatened in prison.

THE COURT: Well, you told your lawyer you can deal with this perjury charge, didn't you?

DEFENDANT BRANCH: Yes, I can.

THE COURT: Well—

DEFENDANT BRANCH: I also was wounded.

THE COURT: What's that?

DEFENDANT BRANCH: I also was wounded by their behalf.

The circumstances surrounding witness Branch's plea to the charge of perjury provide meaningful insight into that plea. We believe that the extraordinary facts of the case require us to reject defendant's argument that the court erred in allowing the State to introduce evidence of Branch's grand jury testimony.

In N.C. Gen. Stat. § 15A-623(e) (1988), the General Assembly mandated secrecy for grand jury proceedings and, "except as expressly provided in this Article, members of the grand jury and all persons present during its sessions shall keep its secrets and refrain from disclosing anything which transpires during any of its sessions." Subsection (h) of the same statute provides, among other things:

> Notwithstanding subsection (e) of this section, the record of the examination of witnesses shall be made available to the examining prosecutor, and he may disclose contents of the record to other investigative or law enforcement officers, the witness or his attorney to the extent that the disclosure is appropriate to the proper performance of his official duties. The record of the examination of a witness may be used in a trial to corroborate or impeach that witness to the extent that it is relevant and otherwise admissible.

N.C.G.S. § 15A-623(h). This statute implicitly leaves to the jury the determination of whether the witness is being honest in his testimony before them. (It is noteworthy that, in 1991, the legislature changed the quoted sentence in subsection (h) to omit the phrase "to corroborate or impeach that witness," suggesting that such testimony may now be introduced as substantive evidence. The effective date of that change, however, was after defendant's trial, and its effect is not before us.)

In contrast to this statute concerning sworn grand jury statements, the cases cited by defendant and other cases cited in the concurring opinion all pertain to unsworn statements of witnesses and, therefore, are distinguishable on this basis, and, in some instances, additional bases. The evidence the State sought to introduce in *State v. Hunt*, 324 N.C. 343, 378 S.E.2d 754 (1989), was unsworn testimony of a 14-year-old prostitute who denied even making a previous statement. Likewise, in *State v. Williams*, 322 N.C. 452, 368 S.E.2d 624 (1988), the Supreme Court refused to allow the State to impeach a witness by using his prior unsworn statement which itself constituted hearsay. *Williams* also involved the witness's denial that he had ever made a prior statement. In *State v. Cutshall*, 278 N.C. 334, 180 S.E.2d 745 (1971), the Court held inadmissible an earlier unsworn statement of defendant's son, finding the statement a "speculative, conjectural expression of opinion completely lacking in probative value towards establishing a material fact in the case." *Id.* at 349, 180 S.E.2d at 754-55. Again in *Cutshall*, the Court dealt with the State's attempt to elicit evidence of a statement after the witness denied making it. The case of *State v. Moore*, 275 N.C. 198, 166 S.E.2d 652 (1969), like *Williams*, involved double hearsay. The Supreme Court held that a witness's prior unsworn statement about what the defendant had told him was incompetent. The statement was collateral because at trial the witness denied ever making it.

Relying on *Hunt* and *Williams*, the Court of Appeals determined in *State v. Jerrells*, 98 N.C. App. 318, 390 S.E.2d 722, *disc. review denied*, 326 N.C. 802, 393 S.E.2d 901 (1990), that the State could not introduce evidence of a prior unsworn statement by a witness who at trial denied making the statement.

All of these cases dealing with the admittedly complex question of collateral matters stand for the proposition that, once a witness *denies* having made a statement, the State may not impeach that

denial by introducing evidence of the statement. While the case before us contains some instances in which the witness Branch denied making certain statements before the grand jury, in many other instances, he claimed that statements he made were false.

We believe that once Branch refused to testify or claimed that parts of his earlier, sworn statements before the grand jury were false, the State's use of that testimony was proper for impeachment purposes. It called into question his denial that he had conspired with defendant to traffic in cocaine, and it therefore went to the essence of, and was material to, the State's case. After hearing arguments of counsel, the trial judge made appropriate findings of fact and concluded that the testimony was admissible for impeachment purposes. At the time the transcript was admitted, he correctly instructed the jury about its limited purpose. We hold that, under this set of facts and given the statute cited above, the trial court properly allowed the introduction of this evidence.

We also disagree with defendant's related argument that the prosecutor acted in bad faith in introducing the transcript of Branch's grand jury testimony. From the record, one cannot tell that either the prosecutor or counsel for defendant was aware of N.C..G.S. § 15A-623(h) which limited the purpose for which the grand jury transcript could be introduced. Indeed, their arguments hinged on *State v. Hunt* which actually supports the prosecutor's actions.

In *Hunt*, the Court looked to federal cases for guidance in discerning those rare instances when the State's introduction of prior inconsistent statements by its own witness was not made solely for the purpose of putting the substance of the statements before the jury, and was not a mere subterfuge. Such exceptional circumstances include "the facts that the witness's testimony was extensive and vital to the government's case, that the party calling the witness was genuinely surprised by his reversal, or that the trial court followed the introduction of the statement with an effective limiting instruction." *Hunt*, 324 N.C. at 350, 378 S.E.2d at 758 (citations omitted). After concluding that there was no assurance that the witness's testimony was critical to the State's case *or* that it was introduced altogether in good faith and followed by effective limiting instructions, *Id.* at 351, 378 S.E.2d at 758-59, the Court found that the witness's prior unsworn statement was inadmissible. In this case, however, Branch's testimony could hardly

be more critical to the State's case. The record reflects that the prosecutor was made aware the day before trial that the witness had indicated his intention not to testify against the defendant. The prosecutor, however, had no choice but to call this witness. We believe that this is one of those rare instances in which the State's introduction of a prior inconsistent statement by its own witness was not a mere subterfuge.

Moreover, in light of the 1991 change in the statute, we cannot see that the prosecutor argued for an unreasonable extension of the law.

For the reasons set forth in section II, we hold that defendant must be granted a

New trial.

Chief Judge ARNOLD concurs.

Judge GREENE concurs in the result with separate opinion.

Judge GREENE concurring in the result.

I agree, and for the reasons stated by the majority, that the trial court properly denied defendant's motion to dismiss the indictment. Like the majority, I also believe that the trial court's conspiracy instruction was erroneous. And, because evidence was presented from which the jury could have determined that defendant conspired with someone besides Branch to sell cocaine, the instructional error was prejudicial and therefore I agree that it entitles defendant to a new trial. N.C.G.S. § 15A-1443(a) (1988).

I disagree, however, with the majority's conclusion that the trial court properly admitted Branch's grand jury testimony as "impeachment" evidence. For the reasons hereinafter set forth, I believe that defendant is also entitled to a new trial on the ground that the trial court improperly admitted Branch's grand jury testimony.

I state the facts necessary to an understanding of the issues which I feel compelled to address. Defendant was indicted in Guilford County for conspiracy to commit trafficking in cocaine by the sale and delivery of more than 400 grams of cocaine. The sole co-conspirator alleged in the indictment was William Anthony Branch

(Branch). The evidence presented by the State at defendant's trial established that in 1988, Michael Richardson (Richardson), a resident of New York City, began a cocaine distribution network in High Point, North Carolina. Richardson testified that he arranged for Branch to move to High Point and distribute the cocaine transported in from New York. Richardson testified that defendant, who is Branch's cousin, moved from New York to High Point in 1989, but that Richardson did not have any personal drug dealings with defendant. Richardson did testify, however, that on one occasion in the summer of 1989 he had an argument with defendant regarding $200.00 owed Branch by defendant for drugs sold by defendant.

Branch, who had earlier testified before the grand jury that he hired defendant to sell cocaine, testified at trial for the State. Prior to calling Branch, the prosecutor advised the court that "we probably ought to be heard outside the presence of the jurors before the next witness testifies." Branch then testified on voir dire that, despite the fact that he testified against defendant before the grand jury, he was not going to testify against defendant at trial, and had told SBI agents the day before that he would not testify. Branch testified that the numerous statements that he made to the grand jury regarding defendant's participation with him in the High Point drug operation were false. The court appointed counsel for Branch and subsequently issued a bench warrant charging Branch with perjury in his testimony before the grand jury, to which Branch pleaded guilty. Defendant made a motion to dismiss the indictment on the ground that Branch gave perjured testimony to the grand jury, which was denied.

Branch then testified for the State before the jury. The trial court declared Branch hostile and allowed the State to cross-examine him. Branch testified that defendant was his cousin who had come to High Point from New York, but that Branch did not hire defendant to help him sell drugs. When asked by the prosecutor whether he had told the grand jury that he brought defendant to High Point to sell drugs for him, Branch denied ever making such a statement. Branch also denied telling SBI detectives that he had brought defendant to High Point to help sell drugs. Over repeated objections by defendant, the prosecutor continued to cross-examine Branch using the portions of Branch's grand jury testimony in which he had stated that defendant worked for him in the High

Point drug operation. Branch either denied making the statements or stated that his prior statements were "false testimony."

In response, the trial court permitted the State to call the court reporter who had transcribed Branch's grand jury testimony. Through this witness, the State attempted to introduce into evidence the full transcript of Branch's grand jury testimony, arguing at length for its admission as substantive evidence. Defendant objected to the admission of the transcript for any purpose. The trial court agreed that it was inadmissible as substantive evidence; however, the court allowed it as impeachment evidence. The court also allowed the State to pass a copy of the transcript of Branch's grand jury testimony to each member of the jury, and instructed the jury to consider it solely for the purpose of "deciding whether you're going to believe or disbelieve [Branch's] sworn testimony at this trial."

---

At the outset, I note my concern with the majority's reading of the amendment to N.C.G.S. § 15A-623(h), dealing generally with grand jury proceedings. The majority acknowledges that the amendment was not in effect at the time of defendant's trial and therefore has no application to the instant case. However, the majority nevertheless concludes that the amendment suggests that grand jury testimony may now be introduced as substantive evidence, a conclusion which is at odds with our Rules of Evidence, for the following reasons.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," N.C.G.S. § 8C-1, Rule 801(c) (1992), and is not admissible except as provided by statute or by our Rules of Evidence. N.C.G.S. § 8C-1, Rule 802 (1992). Thus, in North Carolina, the prior statement of a witness, when offered for its truth, is hearsay. Federal Rule of Evidence 801(d)(1)(A) provides that a prior inconsistent statement of a declarant who testifies at trial and is subject to cross-examination concerning the statement, which prior statement was given under oath, subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition, is not hearsay and therefore is admissible as substantive evidence. Included within the concept of "other proceeding" in the federal rule is grand jury testimony. Michael H. Graham, *Federal Practice and Procedure: Evidence* § 6711, at 446 (1992).

However, because it "departs markedly from the common law in North Carolina," federal Rule 801(d)(1) was deleted from the North Carolina Rules of Evidence. N.C.G.S. § 8C-1, Rule 801(d) commentary (1992); *see also State v. Cope*, 240 N.C. 244, 249, 81 S.E.2d 773, 777 (1954) (prior inconsistent statements admissible for impeachment purposes and not as substantive evidence). In other words, the prior inconsistent statement of a witness—regardless of the circumstances under which it was made—is not admissible as substantive evidence unless it properly falls within an exception to the hearsay rule or except as provided by statute. The latter exception does, however, raise the question of whether N.C.G.S. § 15A-623(h), as amended, authorizes the admission of grand jury testimony as substantive evidence at trial.

Section 15A-623(h), prior to the July, 1991, amendment, provided that "[t]he record of the examination of a [grand jury] witness may be used in a trial *to corroborate or impeach that witness* to the extent that it is relevant and otherwise admissible." N.C.G.S. § 15A-623(h) (1988) (emphasis added). As a result of the amendment, the statute now provides that "[t]he record of the examination of a [grand jury] witness may be used in a trial to the extent that it is relevant and otherwise admissible." N.C.G.S. § 15A-623(h) (Supp. 1992). One possible explanation for the deletion of the phrase "to corroborate or impeach that witness" is simply that it was surplusage, because the statute already stated, as it does now, that the record may be used only to the extent that it is relevant *and otherwise admissible*. In other words, the admissibility of the record of the examination of a grand jury witness, like all evidence, is governed by our Rules of Evidence, and, as previously discussed, our Rules of Evidence preclude the admission of prior inconsistent statements of a witness—whether sworn or unsworn—as substantive evidence.

On the other hand, by deleting in Section 15A-623(h) the phrase "to corroborate or impeach that witness," the Legislature could have intended to authorize the admission of grand jury testimony as substantive evidence as well as for corroboration or impeachment. However, because this appeal does not require that we construe Section 15A-623(h), as amended, it is unnecessary to resolve the issue raised. Under the law applicable to the instant case, there is no question that grand jury testimony is not admissible as substantive evidence.

There remains, however, the question of whether the trial court properly admitted Branch's prior grand jury testimony as impeachment evidence. As a preliminary matter, I note that, assuming without deciding that Branch's plea of guilty to perjury before the grand jury somehow renders his grand jury testimony incompetent, evidence which is used for impeachment purposes is admissible as such notwithstanding the fact that it would otherwise be incompetent. *Cf. State v. Riddle*, 316 N.C. 152, 159, 340 S.E.2d 75, 79 (1986) (corroborative evidence admissible as such even if otherwise incompetent). Therefore, the perjury adjudication has no effect on whether the trial court properly admitted Branch's former testimony for impeachment purposes.

Defendant argues that he is entitled to a new trial because the court committed reversible error (I) in allowing the State to use portions of Branch's grand jury testimony when cross-examining Branch, and (II) in admitting the entire transcript of Branch's grand jury testimony for "impeachment" purposes.

The rule allowing the use of prior inconsistent statements for impeachment purposes is not without its exceptions. Two exceptions are raised by the facts of the instant case.

I

Defendant argues that the court erred in allowing the State to call the court reporter and to introduce through this witness the entire transcript of Branch's grand jury testimony.

Under the rules applicable to cross-examination of a witness, whether the witness is called by the opposing party or is a party's own witness who has been declared hostile, "extrinsic evidence of prior inconsistent statements may not be used to impeach a witness where the questions concern matters collateral to the issues." *State v. Hunt*, 324 N.C. 343, 348, 378 S.E.2d 754, 757 (1989). In other words, "if the inquiry on cross-examination is as to inconsistent statements about 'collateral' matters, the cross-examiner must 'take the answer' [of the witness]—he cannot bring on other witnesses to prove the making of the alleged statement." Edward W. Cleary et al., *McCormick on Evidence* § 36, at 77 (3d ed. 1984); *accord* 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 48, at 227-28 (3d ed. 1988) [hereinafter *Brandis*]; *State v. Green*, 296 N.C. 183, 192-93, 250 S.E.2d 197, 203 (1978). As a general rule, "collateral matters" are those which are not relevant to the issues

in the case, including immaterial matters and irrelevant facts inquired about to test observation or memory. *Brandis* at 228. Our Courts, however, have interpreted this rule of evidence as also barring (1) testimony which contradicts a witness's denial that the witness stated on a prior occasion that the defendant made an inculpatory statement to him, *State v. Moore*, 275 N.C. 198, 213-14, 166 S.E.2d 652, 662-63 (1969); *State v. Williams*, 322 N.C. 452, 454-56, 368 S.E.2d 624, 626-27 (1988); and (2) testimony which contradicts a witness's denial that the witness on a prior occasion made a statement inconsistent with his testimony at trial. *Hunt*, 324 N.C. at 348, 378 S.E.2d at 757; *State v. Jerrells*, 98 N.C. App. 318, 321, 390 S.E.2d 722, 724, *disc. rev. denied*, 326 N.C. 802, 393 S.E.2d 901 (1990); *State v. Cutshall*, 278 N.C. 334, 349, 180 S.E.2d 745, 754 (1971); *but see Green*, 296 N.C. at 193, 250 S.E.2d at 204 (alibi witness, who denied at trial that he told a detective prior to trial that he was asleep when defendant came home on the night of the murder, was properly impeached by the detective, who testified regarding the substance of the alibi witness's prior statement, on the ground that the prior statement concerned the subject matter of the alibi witness's trial testimony and the subject matter of the trial testimony was material to an issue in the case).

In the instant case, Branch denied telling the grand jury that Branch brought defendant to High Point to sell drugs for him. In response, the State with the permission of the court called as an impeaching witness the court reporter who had transcribed the grand jury testimony, and, through this witness, introduced the entire transcript of Branch's testimony, giving a copy to each member of the jury. Under the principles previously discussed, in particular those set forth in *Hunt, Cutshall*, and *Jerrells*, the trial court erred in admitting this evidence. The majority's effort to distinguish this line of cases from the instant case on the ground that the former involved *unsworn* prior inconsistent statements and the latter, *sworn* prior inconsistent statements, is unpersuasive. This is so because, as previously discussed, our Rules of Evidence in addressing the admissibility of prior inconsistent statements make no distinction between those that are sworn and those that are unsworn—*any* prior inconsistent statement is admissible, but only for impeachment purposes—nor have I been able to determine that our Courts have ever made such a distinction. Not in *Hunt* nor in any of the cases preceding it which I have discussed did the Court ever suggest that its holding, prohibiting the admission

STATE v. MINTER

[111 N.C. App. 40 (1993)]

of extrinsic evidence to impeach a witness who, at trial, denies making a prior inconsistent statement, was based on the fact that the prior inconsistent statement to which the impeaching witness testifies was not given under oath.

II

Defendant argues that the court also erred in allowing the State to use portions of Branch's grand jury testimony during its cross-examination of Branch because the record reveals that the State attempted to "impeach" Branch solely for the improper purpose of putting the substance of Branch's prior testimony before the jury.

Impeachment of a witness by use of a prior inconsistent statement made by the witness is not permitted where such impeachment is " 'employed as a *mere subterfuge* to get before the jury evidence not otherwise admissible.' " *Hunt*, 324 N.C. at 349, 378 S.E.2d at 757 (citations omitted).

> [I]t would be an abuse of [Rule 607], in a criminal case, for the prosecution to call a witness that it knew would not give it useful evidence, just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence — or, if it didn't miss it, would ignore it.

*Id.* at 349-50, 378 S.E.2d at 758 (quoting *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984) ). Only in rare cases have courts addressing the question found good faith and the absence of subterfuge on the part of the State in introducing hearsay statements to impeach its own witness. *Id.* at 350, 378 S.E.2d at 758.

A review of the record in light of *Hunt* leads me to the inescapable conclusion that the hearsay statements of Branch, who testified for the State as a hostile witness, were used by the State primarily for the purpose of putting before the jury the substance of those statements. A thorough reading of the transcript in this case reveals that the prosecutor knew prior to trial that Branch would not testify against defendant, yet Branch nonetheless was called as a witness. Moreover, the jury's consideration of the portions of Branch's grand jury testimony used by the State during cross-examination of Branch was not limited to purposes of impeachment. The State's lack of good faith is further evidenced by its strenuous argument at trial for the admission of the transcript

of Branch's grand jury testimony as *substantive* evidence. As the following exchange reveals, only after failing to persuade the court that the testimony was admissible as substantive evidence did the State, after suggestion by the trial court, offer the evidence for "impeachment" purposes:

> THE COURT: All right. Mr. [Prosecutor], I'll hear you further on this. You tender [Branch's grand jury testimony] as impeachment evidence?
>
> [THE PROSECUTOR]: *I tender it, Your Honor, as substantive evidence.* And I understand Your Honor's ruling on that.
>
> THE COURT: I can't—I've read everything I know to read. And I know of no authority to admit it as substantive evidence.
>
> [THE PROSECUTOR]: *Well, Your Honor, then I tender it also as impeachment evidence.*
>
> THE COURT: I'm going to overrule the objection and let it in as impeachment.

[Emphases added.] I can conceive of no purpose on the part of the State for introducing the entire transcript of Branch's prior testimony, and ensuring that each member of the jury was given his own copy to read, other than the improper purpose of hoping that the jury would consider the testimony as substantive evidence.

The foregoing circumstances indicate on the part of the State a lack of good faith in using Branch's grand jury testimony, *see* *Hunt*, 324 N.C. at 350-51, 378 S.E.2d at 758-59, especially in light of the damaging nature of the evidence, and therefore the trial court erred in allowing its use.