STATE OF NORTH CAROLINA v. LARRY LAMB

No. 567A93

(Filed 3 November 1995)

## 1. Conspiracy § 33 (NCI4th)— conspiracy to commit armed robbery—evidence sufficient

There was sufficient evidence of conspiracy to commit robbery with a dangerous weapon where defendant met with two

other men, one of whom was armed; the three men drove to the home of the victim; and the three men then left the vehicle, entered the victim's home, robbed, and shot him.

**Am Jur 2d, Conspiracy § 40; Trial § 1286.**

2. **Criminal Law § 794 (NCI4th)— acting in concert—armed robbery—instructions—presence of defendant**

There was no error in an instruction on acting in concert where the court did not instruct the jury that it must find that defendant was actually or constructively present when the armed robbery was committed before the defendant could be convicted. It is not necessary to tell the jury it must find the defendant was present to find him guilty so long as the court explains the doctrine so that the jury can apply it, and if the jury's acceptance of the State's version of the evidence mandates finding the defendant was present. Here, if the jury had believed the defendant, he would have been found not guilty without regard to a charge on acting in concert, but the jury accepted the State's version of the incident, under which the defendant was present at the scene of the crime.

**Am Jur 2d, Trial § 1255.**

3. **Evidence and Witnesses § 2966 (NCI4th)— armed robbery—witness afraid of accomplice—relevant**

There was no plain error in a prosecution for felony-murder, armed robbery, and conspiracy in the admission of evidence that an accomplice had beaten the witness and stolen things from her and her children and that she was afraid to leave him because there would be trouble when he found her. This testimony was relevant to prove that the witness's fear of the accomplice was the reason she waited as long as she did before coming forward to tell of the robbery-murder.

**Am Jur 2d, Evidence §§ 340, 341.**

4. **Evidence and Witnesses § 728 (NCI4th)— murder and robbery—cross-examination of defendant—use of sawed-off shotgun as drug dealer**

There was no plain error in a prosecution for murder, robbery, and conspiracy where defendant was asked on cross-examination whether a sawed-off shotgun found during a raid on his home was used in his drug dealings. Defendant had admitted that

he was a drug dealer and it was in evidence that a sawed-off shotgun had been found in his home. The question could not have had much impact on the jury, was peripheral to the issues being tried, and did not rise to the level of plain error.

**Am Jur 2d, Trial § 814, 834, 836.**

**5. Evidence and Witnesses § 873 (NCI4th)— murder, robbery, conspiracy—statement by accomplice—offered to explain witness's delay in reporting—not hearsay**

The trial court did not err in a prosecution for murder, robbery, and conspiracy by admitting testimony that an accomplice had told the witness the morning after the murder and robbery that he thought the victim had more money than they had found, that she should say she did not know anything about the shooting if anyone asked, and that she would go to jail and lose her children if she did not do so. The testimony was not introduced for the truth of the statement but to again explain why the witness did not report the offense in a more timely manner. The testimony that the victim had less money than expected could not have been too prejudicial because it added little to the testimony of this witness and did not rise to the level of a fundamental error affecting the basic fairness of the trial. N.C.G.S. § 8C-1, Rule 801(c).

**Am Jur 2d, Evidence § 661.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Grant, J., at the 17 August 1993 Criminal Session of Superior Court, Duplin County, upon a jury verdict of guilty of first-degree murder. The defendant's motion to bypass the Court of Appeals as to a conviction of conspiracy to commit robbery with a dangerous weapon was allowed 25 July 1994. Heard in the Supreme Court 11 May 1995.

Early in the morning hours of 28 February 1987, the body of Leamon Grady was found in his home in Duplin County. Grady, who had a reputation of dealing in liquor, had died as the result of a single gunshot wound to the chest.

On 31 August 1990, Lovely Lorden contacted the Sheriff's Department and indicated that she had information pertaining to the Grady case. Ms. Lorden stated that she had remained silent because she feared Levon Junior ("Bo") Jones, with whom she had been living at the time of Grady's murder. Ms. Lorden testified at trial that she

accompanied Jones and Ernest Matthews on the evening of 27 February 1987. They went to an ABC store and a bar during the course of the evening before picking up the defendant at Carolina Turkeys. The group returned to the bar, where the three males in the group exited the car. They walked behind the building and stayed for approximately ten to twenty minutes. They returned to the car and drove directly to the victim's home. No one in the car spoke during this drive. At Grady's home, the three men left the vehicle and approached the house. Jones, armed with a pistol, entered first, followed by Matthews and the defendant. Ms. Lorden heard two gunshots inside the house. The three men returned to the car with Jones carrying a case of beer. Jones then drove them to a bridge, where he stopped and threw a pistol into the river. The group consumed the beers. At Ms. Lorden's insistence, Jones took her home. He gave her over $200 in cash, which she testified he had not possessed earlier in the evening. Jones reminded her of how many children she had and that she too could go to jail for the events of the evening. Ms. Lorden perceived this as a threat.

Ms. Lorden admitted that she continued to live with Jones after the murder. She contemplated leaving on several occasions but was afraid she would lose her children. She eventually informed police about Jones's participation in an assault on a Hispanic male. Jones was convicted of the assault and was scheduled to be released from prison at approximately the time Ms. Lorden came forward with the information in this case.

The defendant testified in his own behalf. He testified that he left work at 12:06 a.m. on 28 February 1987 and walked home with no intervening stops. He slept until 8:00 a.m. and then returned to work. Lamb testified that he did not learn of the murder until after he left work the following afternoon. The defendant opined that his name had been brought into this case as the result of a recent business decision on his part. The defendant admitted that he was a drug dealer and recently had elected to change suppliers. He denied any involvement with the crime in question.

The jury found the defendant guilty of first-degree murder based on felony murder, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. The State did not seek the death penalty, and the court sentenced the defendant to life in prison for the first-degree murder conviction and ten years for the conviction of conspiracy to commit robbery with a dangerous

weapon. Judgment was arrested on the conviction of robbery with a dangerous weapon. The defendant appealed.

*Michael F. Easley, Attorney General, by Jane R. Garvey, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

WEBB, Justice.

[1] In his first assignment of error, the defendant argues that his motion to dismiss the charge of conspiracy to commit robbery with a dangerous weapon should have been allowed for insufficiency of the evidence. He says that Lovely Lorden provided the only eyewitness testimony to the occurrence and that her testimony showed there was no discussion of the crime by any of the men. It is possible that the men discussed the crime when they were behind Herman's Place, says the defendant, but this is only speculation. The defendant contends we can just as easily infer that the three men went to Mr. Grady's home without a shared plan to rob him and that Bo Jones turned a visit to buy alcohol into a robbery. The defendant, relying on *United States v. Giunta*, 925 F.2d 758 (4th Cir. 1991), says the "mere fact that several people participated in criminal activity does not prove [a] joint plan to do so."

A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act by unlawful means. *State v. Bindyke*, 288 N.C. 608, 220 S.E.2d 521 (1975). We said in *State v. Whiteside*, 204 N.C. 710, 169 S.E. 711 (1933):

Under such conditions, the results accomplished, the divergence of those results from the course which would ordinarily be expected, the situation of the parties and their antecedent relations to each other, together with the surrounding circumstances, and the inferences legitimately deducible therefrom, furnish, in the absence of direct proof, and often in the teeth of positive testimony to the contrary, ample ground for concluding that a conspiracy exists.

*Id.* at 713, 169 S.E. at 712.

We hold that the evidence that defendant met with two other men, one of whom was armed; that the three men drove to the home of the victim; and that the three men then left the vehicle and entered

the victim's home, robbed the victim, and shot him is substantial evidence from which the jury could find the robbery was carried out pursuant to a common plan to rob the victim. This supports the finding of guilty of conspiracy to commit robbery with a dangerous weapon. *See State v. Abernathy*, 295 N.C. 147, 244 S.E.2d 373 (1978).

This assignment of error is overruled.

[2] The defendant next assigns error to the charge. The court in its charge on acting in concert did not instruct the jury that before the defendant could be convicted by proving he was acting in concert, the jury must find that he was actually or constructively present when the crime was committed. The defendant says this was error.

In order to convict a defendant for acting in concert, the State must prove he was actually or constructively present. If all the State's evidence shows, however, that the defendant was at the scene of the crime, it is not necessary that the court charge the jury that the defendant had to be present. *State v. Hunt*, 339 N.C. 622, 649, 457 S.E.2d 276, 292-93 (1994), *reconsideration denied*, 339 N.C. 741, 457 S.E.2d 304 (1995); *State v. Gilmore*, 330 N.C. 167, 171, 409 S.E.2d 888, 890 (1991); *State v. Williams*, 299 N.C. 652, 658, 263 S.E.2d 774, 778 (1980).

The defendant, while conceding that presence is not an element of robbery with a dangerous weapon, says it is an element of the State's case when the State is relying on acting in concert to convict. He contends that by not submitting presence to the jury, the court in effect directed a verdict of guilty and denied him the right to a unanimous jury verdict in violation of his rights under the Constitutions of the United States and North Carolina. *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508 (1975); *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982).

Acting in concert is a doctrine developed to make persons who participate in crimes responsible for criminal activity although they do not do all the acts necessary to constitute the crimes. In charging on acting in concert, the court must explain it adequately for the jury to be able to understand it and apply it to the evidence in the case. If all the State's evidence shows that the defendant was present when the crime was committed, it is not necessary to explain to the jury that the defendant must be present in order for it to understand and apply the doctrine of acting in concert.

**STATE v. LAMB**

[342 N.C. 151 (1995)]

We have said in some of our cases that presence is an element of acting in concert. *State v. Wilson*, 322 N.C. 117, 367 S.E.2d 589 (1988); *State v. Williams*, 299 N.C. 652, 263 S.E.2d 774 (1980). This does not mean it is an element of the crime that must be proved. So long as the court explains the doctrine so that the jury can apply it, and if the jury's acceptance of the State's version of the evidence mandates finding the defendant was present, it is not necessary to tell the jury it must find the defendant was present to find him guilty.

The defendant contends that his presence at the crime scene was disputed because he testified that he knew nothing of the crimes and was asleep in his bed when the crimes were committed. If the jury had believed the defendant, he would have been found not guilty without regard to a charge on acting in concert. The jury accepted the State's version of the incident. Under this version, the defendant was present at the scene of the crime.

This assignment of error is overruled.

[3] The defendant's next three assignments of error deal with testimony elicited by the State. No objection was made to this testimony, but the defendant asks us to consider the questions he has raised under the plain error rule. Rule 10(b)(1) of the Rules of Appellate Procedure provides that an assignment of error may be made to the admission of testimony only if exception was taken to its admission at trial. We have said that it places an impossible burden on the trial judge for a party as a matter of trial strategy to allow otherwise incompetent evidence to be admitted and then assign error to it. A trial judge should not have to determine the soundness of a party's trial strategy and make an objection for him. *State v. Oliver*, 309 N.C. 326, 307 S.E.2d 304 (1983); *State v. Black*, 308 N.C. 736, 303 S.E.2d 804 (1983). We shall consider these assignments of error under the plain error rule.

Lovely Lorden testified on direct examination that Bo Jones had beaten her and had stolen things from her and her children. She said she was afraid to leave him because there would be trouble when he found her. The defendant says this testimony was irrelevant to any issue in this case and served only to "smear" Bo Jones and, by association, the defendant.

This testimony was relevant to prove that Ms. Lorden's fear of Bo Jones was the reason she waited as long as she did before coming forward to tell of the incident. We said in *State v. Larrimore*, 340 N.C.

119, 456 S.E.2d 789 (1995), "Where, as here, the witness has been the subject of past acts of violence and thereby has reason to fear another individual, those past acts are relevant to the issue of the witness' character for truthfulness or untruthfulness." *Id.* at 152, 456 S.E.2d at 807. It was not error and certainly not plain error to admit the testimony.

This assignment of error is overruled.

[4] The defendant contends in his next assignment of error that certain questions put to him on cross-examination were improper. The defendant testified on direct examination that in 1991 he was arrested for dealing in marijuana. He said that when the officers came to his home with a search warrant, he showed them the marijuana because he did not want the officers "messing up my house" in a search. On cross-examination, the State elicited testimony that the officers found several weapons, including a sawed-off shotgun, during the raid. The defendant was asked on cross-examination whether he had the gun because he was a drug dealer, and he denied that this was the case.

The defendant says the only reason the prosecutor asked him the question about his using the shotgun in his drug business was to portray him as a "violent thug" who would be inclined to participate in a crime such as the one involved in this case. The question was peripheral to the issues being tried. The defendant had admitted he was a drug dealer, and it was in evidence that a sawed-off shotgun had been found in his home. It could not have had much impact on the jury for the prosecuting attorney to ask whether the shotgun was used in the defendant's drug dealings, which the defendant denied. The question asked the defendant certainly did not rise to the level of plain error.

This assignment of error is overruled.

[5] In his last assignment of error, the defendant contends hearsay testimony was used against him. He bases this argument on the testimony of Lovely Lorden that on the morning after the murder and robbery, Bo Jones told her that he thought the victim had more money than the three men were able to find. She also testified that he told her that if anyone asked about the shooting, she should say that she did not know anything about it and that if she did not do so, she would go to jail and lose her children.

The testimony in regard to the threat against Ms. Lorden was not introduced for the truth of the statement. It again explained why she

did not report the offense in a more timely manner. It was not hearsay. N.C.G.S. § 8C-1, Rule 801(c) (1992); *State v. Faucette*, 326 N.C. 676, 392 S.E.2d 71 (1990).

In regard to Ms. Lorden's testimony that Bo Jones had told her that he thought the victim had more money than the three men were able to find, it could not have been too prejudicial to the defendant. Ms. Lorden had testified that she drove with three men, including the defendant, to the victim's home; that the three men went inside with a gun; that she heard two shots; that the three men returned to the automobile; and that thereafter Bo Jones gave her money. The statement by Bo Jones in regard to the amount of money they were able to find added little to the testimony of Ms. Lorden. It did not rise to the level of a fundamental error affecting the basic fairness of the trial. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

This assignment of error is overruled.

NO ERROR.