IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-400

Filed: 7 April 2020

Mecklenburg County, Nos. 16CRS027739, 027741, 235955

STATE OF NORTH CAROLINA

v.

FABIOLA ROSALES CHAVEZ

Appeal by Defendant from judgments entered 29 November 2018 by Judge

Joseph N. Crosswhite in Mecklenburg County Superior Court. Heard in the Court of

Appeals 30 October 2019.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Asher Spiller, for the State-Appellee.*
>
> *Marilyn G. Ozer for Defendant-Appellant.*

COLLINS, Judge.

Defendant appeals from judgments entered upon jury verdicts of guilty of

attempted first-degree murder, conspiracy to commit first-degree murder, and

assault with a deadly weapon with intent to kill inflicting serious injury. Defendant

argues that the trial court: (1) erred by denying Defendant's motions to dismiss the

conspiracy charge; (2) committed plain error in the delivery of jury instructions; and

(3) plainly erred by admitting hearsay evidence that violated Defendant's right to

confrontation. As the trial court incorrectly instructed the jury on the law of

conspiracy to commit first-degree murder, we discern plain error and award a new trial on the conspiracy conviction. However, as to the issues concerning the denial of Defendant's motions to dismiss and the admission of hearsay evidence, we discern no error.

## I. Procedural and Factual Background

On 3 October 2016, Defendant Fabiola Rosales Chavez was indicted on two counts of attempted first-degree murder, one count of conspiracy to commit first-degree murder, two counts of assault with a deadly weapon with intent to kill inflicting serious injury, and one count of first-degree burglary. The conspiracy indictment stated, "[t]he jurors for the State upon their oath present that on or about the 21st day of September, 2016, in Mecklenburg County, Fabiola Rosales Chavez did unlawfully, willfully, and feloniously conspire with Carlos Roberto Manzanares to commit the felony of First Degree Murder[.]" Orders for Defendant's arrest were issued on 6 October 2016.

On 26 November 2018, the State dismissed one count of attempted first-degree murder, one count of assault with a deadly weapon with intent to kill inflicting serious injury, and the single count of first-degree burglary. That same day, Defendant's case came on for trial.

The evidence at trial tended to show: On 21 September 2016, Defendant, along with Carlos Manzanares ("Carlos") and a second, unidentified male, entered the home

of Roberto Hugo Martinez ("Roberto"). Defendant and the two men were armed with a machete and a hammer. Roberto was asleep in bed with his girlfriend, Maria Navarro ("Maria"), and Maria's 16-month-old infant. Roberto and Maria were awakened when the bedroom lights flashed on, and Maria observed Defendant and the two men enter the room. Maria testified that she heard Defendant say, "nobody laughs at me. Nobody makes fun of me, and I'm here to kill you." Maria witnessed Defendant throw the machete at Roberto, and then watched Carlos and the unidentified male strike and kick Roberto repeatedly. One of the men took the machete and hit Roberto in the head with it. After Roberto fell to the ground, "[t]hey hit him. They kicked him. They hit him in the head with the machete and with the hammer."

Carlos and the unidentified male beat Roberto until he was unconscious, and then Carlos told Maria to flee because, "[i]f you stay here [Defendant] will kill you." Maria grabbed her baby, ran from the apartment, and began knocking on doors in search of help. Maria also called 911 and reported that someone was trying to kill her. Defendant and Carlos pursued Maria outside and caught up to her in a parking lot, where Defendant told Carlos to kill Maria because she had called the police. Carlos refused Defendant's directive to kill Maria, and Defendant fled the parking lot. Carlos remained in the parking lot with Maria until law enforcement arrived.

On 29 November 2018, the jury found Defendant guilty on all charges. The trial court sentenced Defendant to 132-171 months' imprisonment for the attempted first-degree murder conviction; 132-171 months' imprisonment for the conspiracy to commit first-degree murder conviction, to be served consecutively to the first sentence; and 72-99 months' imprisonment for the assault with a deadly weapon with intent to kill inflicting serious injury conviction, to be served consecutively to the second sentence. From entry of judgment, Defendant gave proper notice of appeal.

## II. Discussion

Defendant argues on appeal that the trial court (1) erred by denying Defendant's motion to dismiss the conspiracy charge; (2) plainly erred by instructing the jury, and accepting its verdict of guilty, on the offense of conspiracy to commit first-degree murder; and (3) plainly erred by admitting hearsay evidence that violated Defendant's right to confrontation.

*1. Motion to Dismiss Conspiracy Charge*

Defendant first argues that the trial court erred by denying her motion to dismiss for insufficient evidence the charge of conspiracy to commit first-degree murder.

It is apparent from the record that Defendant did not move to dismiss the conspiracy charge at the close of all evidence but, instead, explicitly stated "that [the conspiracy] count should be allowed to go forward" because "conspiracy is very easy

for the State to prove[.]" Because Defendant failed to move to dismiss the conspiracy to commit first-degree murder charge, Defendant has failed to preserve this argument for our review. N.C. R. App. P. 10(a)(3) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion [and] . . . obtain a ruling upon the party's request, objection, or motion.").

In the alternative, Defendant requests that we invoke Rule 2 and determine whether there was sufficient evidence to support the conspiracy charge. An appellate court may address an unpreserved argument "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest[.]" N.C. R. App. P. 2. However, "the authority to invoke Rule 2 is discretionary, and this discretion should only be exercised in exceptional circumstances in which a fundamental purpose of the appellate rules is at stake." *State v. Pender*, 243 N.C. App. 142, 149, 776 S.E.2d 352, 358 (2015) (internal quotation marks, citations, and ellipsis omitted). This case does not involve exceptional circumstances, and we, in our discretion, decline to invoke Rule 2.

Also in the alternative, Defendant argues that her trial counsel rendered ineffective assistance of counsel ("IAC") by failing to move to dismiss the charge of conspiracy to commit first-degree murder.

Claims of IAC generally should be considered through motions for appropriate relief. *State v. Stroud*, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001). However, we may decide the merits of this claim because the trial transcript reveals that no further investigation is required. *See State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) ("IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required . . . ."). "On direct appeal, [this Court] . . . limits its review to material included in the record on appeal and the verbatim transcript of proceedings, if one is designated." *Id.* at 166, 557 S.E.2d at 524-25 (quotation marks and citation omitted).

To prevail on a claim for IAC, a defendant must satisfy a two-part test:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*State v. Banks*, 367 N.C. 652, 655, 766 S.E.2d 334, 337 (2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

An attorney's failure to move to dismiss a charge is not ineffective assistance of counsel when the evidence is sufficient to defeat the motion. *State v. Gayton-Barbosa*, 197 N.C. App. 129, 141, 676 S.E.2d 586, 594 (2009). "[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or

jury." *Strickland*, 466 U.S. at 695. "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985).

A conspiracy is an "agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means." *State v. Gibbs*, 335 N.C. 1, 47, 436 S.E.2d 321, 347 (1993) (citations omitted). An agreement must be shown to prove a conspiracy, but the agreement may be an implied agreement "generally inferred from . . . the surrounding facts and circumstances, rather than established by direct proof." *State v. Fleming*, 247 N.C. App. 812, 819, 786 S.E.2d 760, 766 (2016) (citing *State v. Whiteside*, 204 N.C. 710, 712-13, 169 S.E. 711, 712 (1933)). Direct proof of a conspiracy is "not essential, as such is rarely obtainable." *State v. Winkler*, 368 N.C. 572, 576, 780 S.E.2d 824, 827 (2015) (citation omitted). Thus, circumstantial evidence is permitted to find a conspiracy. *Id.*

Moreover, our Courts have determined that a simultaneous attack on a victim or attacking a victim in a coordinated manner is sufficient to present the charge of conspiracy to the jury. *See State v. Lamb*, 342 N.C. 151, 156, 463 S.E.2d 189, 191 (1995) (determining "substantial evidence from which the jury could find the robbery was carried out pursuant to a common plan" to support the finding of guilty of

conspiracy where the defendant and two other men drove to a victim's home, robbed and shot the victim, and there was no other evidence of discussion or planning of the crime between the men); *see also State v. Reid*, 175 N.C. App. 613, 622-23, 625 S.E.2d 575, 584 (2006) (finding substantial evidence of conspiracy where the defendant and two other men dragged the victim from his home, shot the victim in the back, and left the home together after finding no money or drugs in the victim's home).

Here, there was substantial evidence of a conspiracy between Defendant and Carlos to commit murder of Roberto. Maria testified that Defendant and two other men, one of whom was Carlos, came into Roberto's bedroom and attacked them. Maria testified that Defendant and the two men were armed with a machete and a hammer, that "the other two men came in and started hitting [Roberto], kicking him[,]" and that "[o]ne of them took [the machete] from [Defendant] to hit Roberto in the head with it." "[The guys] hit him. They kicked him. They hit him in the head with the machete and with the hammer." Maria then positively identified a photo of Carlos, explaining that "[h]e's one of the guys who attacked Roberto."

Maria further testified,

> [Defendant] grabbed me by the hair and she was pulling me up. . . . [A]nd she said, I'm going to kill you. And that's when [Carlos] interfered and [Carlos] said, no you're not going to -- you -- I'm -- you're not going to do that because you told me here, we were here for something different, and I'm not going to mess with a mother and a child.

8

This testimonial evidence supports that Defendant and Carlos entered into an agreement to commit murder of Roberto. *Whiteside*, 204 N.C. at 712-13, 169 S.E. at 712. Maria's testimony also shows a simultaneous, coordinated attack on Roberto and Maria, which provides circumstantial evidence of an agreement to commit murder between Defendant and Carlos. *Lamb*, 342 N.C. at 155-56, 463 S.E.2d at 191. Taken together, these facts and circumstances are substantial evidence showing an agreement to commit murder between Defendant and Carlos. *Whiteside*, 204 N.C. at 712-13, 169 S.E. at 712; *Gibbs*, 335 N.C. at 47, 436 S.E.2d at 347.

As there was substantial evidence to support the conspiracy charge, Defendant was not prejudiced by his attorney's failure to make a motion to dismiss the charge of conspiracy to commit first-degree murder. *Gayton-Barbosa*, 197 N.C. App. at 141, 676 S.E.2d at 594. Because Defendant has shown "no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different," Defendant's argument is without merit. *Braswell*, 312 N.C. at 563, 324 S.E.2d at 249.

2. *Jury Instruction*

Defendant next argues that the trial court erred in its instruction to the jury on the charge of conspiracy to commit first-degree murder. Defendant specifically argues that the trial court plainly erred by instructing the jury, and accepting its verdict of guilty, on the offense of conspiracy to commit first-degree murder when only

one co-conspirator was named in the conspiracy indictment, the State presented

evidence of two co-conspirators, and the jury instruction failed to limit the jury's

consideration to the co-conspirator named in the indictment.

Standard of Review

The parties dispute the appropriate standard of review. Defendant argues

that, due to her failure to object to the jury instructions when presented at trial, the

proper standard of review on appeal is plain error. The State argues that because

Defendant did not object to the jury instructions and instead "indicat[ed] to the Court

that [s]he was satisfied with the instructions[,]" Defendant invited the error and

cannot complain about the instructions on appeal.

The same argument the State makes here has been soundly rejected by both

of our appellate courts. In *State v. Harding*, 258 N.C. App. 306, 813 S.E.2d 254 (2018),

"[t]he State argue[d] that defendant [wa]s precluded from plain error review in part

under the invited-error doctrine because he failed to object, actively participated in

crafting the challenged instruction, and affirmed it was 'fine.'" *Id.* at 311, 813 S.E.2d

at 259. Concluding that defendant's argument was reviewable for plain error, this

Court stated,

> Even where the "trial court gave [a] defendant numerous
> opportunities to object to the jury instructions outside the
> presence of the jury, and each time [the] defendant
> indicated his satisfaction with the trial court's
> instructions," our Supreme Court has not found the

> defendant invited his alleged instructional error but applied plain error review.

*Id.* (*citing State v. Hooks*, 353 N.C. 629, 633, 548 S.E.2d 501, 505 (2001) (alterations in original).

Similarly, in *State v. Hardy*, 353 N.C. 122, 131, 540 S.E.2d 334, 342 (2000), our North Carolina Supreme Court explained that defendant

> had ample opportunity to object to the instruction outside the presence of the jury. After excusing the jury to the deliberation room, the trial court asked, "Prior to sending back the verdict sheets does the State wish to point out any errors or omissions from the charge?" The trial court then asked the same of defendant, and defendant responded with respect to other issues but did not object to the instruction in question. . . . As defendant failed to preserve this issue by objecting during trial, we will review the record to determine if the instruction constituted plain error.

*Id.* (*citing State v. Cummings*, 326 N.C. 298, 315, 389 S.E.2d 66, 75 (1990); *State v. Morgan*, 315 N.C. 626, 644, 340 S.E.2d 84, 95 (1986)).

Here, Defendant stated, "And Your Honor, I believe under conspiracy there's mere presence. I want that to be read as well." Defendant explained that the instruction on mere presence "should be under conspiracy. If you read the conspiracy charge, there's a set that says that, however mere presence at the crime scene, even with knowledge of the crime -- I have it. I'll bring it after lunch." The Court gave both parties a final list of the instructions, which included acting in concert and conspiracy. The trial court gave copies of the instructions to the State and Defendant,

11

and instructed both parties "to look at it, make sure you're satisfied with it . . . . Make sure you're okay with that." The trial court again instructed both parties "to look through those charges and make sure you're satisfied, okay?"

As in *Harding* and *Hardy*, Defendant had the opportunity to object to the jury instructions outside the presence of the jury but failed to do so. Thus, as in *Harding* and *Hardy*, we review the record to determine if the instruction constituted plain error.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "'resulted in a miscarriage of justice or in the denial to appellant of a fair trial'" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted).

Moreover, Defendant's request that the trial court give the "mere presence" footnote from N.C.P.I.—202.10,[1] the Acting in Concert jury instruction, did not

---

[1] This footnote states as follows: "7. This paragraph should be given only where there is support in the evidence for a finding that defendant was present at the scene of the crime. *S. v. Beach*, 283 N.C. 261, 267-268 (1973), states that there is an exception to the rule that mere presence does not make one an accessory: "" . . .when the bystander is a friend of the perpetrator, and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may

constitute invited error which waived any right to appellate review of the conspiracy to commit first-degree murder jury instruction, including plain error review.

In *State v. Wilkinson*, 344 N.C. 198, 474 S.E.2d 375 (1996), "defendant requested that the trial court instruct the jury on depravity of mind, and the trial court did so in conjunction with the pattern jury instruction for the (e)(9) 'especially heinous, atrocious or cruel' aggravating circumstance." *Id.* at 212, 474 S.E.2d at 382 (citation omitted). Defendant "submitted a proposed instruction in writing which referred to 'a circumstance which makes a murder *unusually* heinous, atrocious, or cruel.'" *Id.* at 213, 474 S.E.2d at 383. "The trial court substituted the word 'especially' for 'unusually' to ensure that the 'heinous, atrocious, or cruel' aggravating circumstance was labeled as provided in [N.C. Gen. Stat.] § 15A-2000(e)(9)." *Id.* "Defendant stated that he had no objection to this change." *Id.*

On appeal, however, defendant argued that the trial court's modification of his proposed instruction was an erroneous statement of the law. *Id.* Our Supreme Court explained that while Defendant's failure to challenge the instruction at trial would generally require him to show plain error on appeal, "this Court has consistently denied appellate review to defendants who have attempted to assign error to the granting of their own requests." *Id.* "A criminal defendant will not be heard to complain of a jury instruction given in response to his own request." *Id.* (quoting

---

be regarded as an encouragement, and in contemplation of the law this was aiding and abetting.""" *See S. v. Walden*, 306 N.C. 466 (1982)."

*State v. McPhail*, 329 N.C. 636, 643, 406 S.E.2d 591, 596 (1991) (other citations omitted)).

The Supreme Court concluded, "[h]ere, defendant requested an instruction on depravity and agreed to the substitution of the word 'especially' for the word 'unusually.' Since [defendant] asked for the exact instruction that he now contends was prejudicial, any error was invited error. Therefore, this assignment is without merit and is overruled." *Id.* at 214, 474 S.E.2d at 383 (quoting *McPhail*, 329 N.C. at 644, 406 S.E.2d at 596-97) (internal quotation marks omitted); *see also State v. White*, 349 N.C. 535, 570, 508 S.E.2d 253, 275 (1998) (explaining that the defendant "will not be heard to complain on appeal" when the defendant requested a specific jury instruction, "did not object when given the opportunity either at the charge conference or after the charge had been given[,]" and, in fact, "affirmatively approved the instructions during the charge conference") (citing *Wilkinson*, 344 N.C. at 213, 474 S.E.2d at 396).

The present case is materially distinguishable from *Wilkinson* and *White* and compels the opposite result. Here, Defendant requested, and received, a "mere presence" instruction as part of the acting in concert instruction, which was given with the jury instruction on first-degree murder. Defendant does not challenge the "mere presence" instruction, or the first-degree murder instruction for that matter, but instead challenges the conspiracy to commit murder instruction, which was given

according to the pattern instruction. As Defendant did not request the conspiracy instruction, but merely consented to it, Defendant did not invite error like the defendant in *Wilkinson*, and is entitled to plain error review like the defendants in *Harding* and *Hardy*.

Analysis

The North Carolina Constitution provides that "[i]n all criminal prosecutions, every person charged with crime has the right to be informed of the accusation" against him. N.C. Const. Art. I, sec. 23. In *State v. Mickey*, 207 N.C. 608, 178 S.E. 220 (1935), our Supreme Court held that the trial court's jury instruction on conspiracy violated the defendant's constitutional right to be informed of the accusation against him, that the instruction "virtually put[] the defendant upon trial for an additional offense to that named in the bill," and ordered a new trial. *Id.* at 609, 178 S.E. at 221. In *Mickey*, the defendant was indicted for conspiracy to commit murder, and the indictment included two named co-conspirators, Griffin and Murphy. In its charge, the trial court instructed the jury that it could find the defendant guilty if it found that he "agree[d] together with Griffin or Murphy, or both of them, or others to do an unlawful thing . . . ." *Id.* Our Supreme Court held that the instruction was error because the bill of indictment "nowhere contains the words 'others' or 'another,' or any other word or phrase indicating a charge against the defendant of conspiring with any other person or persons than Murphy and Griffin." *Id.*

Similarly, in *State v. Minter*, 111 N.C. App. 40, 432 S.E.2d 146 (1993), this Court determined that the trial court "erred in instructing the jury that they could find the defendant guilty of conspiracy without limiting the conspiracy to one with the co-conspirator [] named in the indictment . . . ." *Id.* at 42, 432 S.E.2d at 148. In *Minter*, the defendant was indicted for conspiracy and the indictment named his co-conspirator, Branch. At trial, the evidence tended to show that the defendant may have conspired with multiple people, not just Branch, to commit an unlawful act. The trial court instructed the jury that it could find the defendant guilty if it found that the defendant "agreed with at least *one other person* . . . to commit the offense and that the defendant and at least *one other person* intended" to carry out the agreement. *Id.* (brackets omitted). On appeal, this Court determined that the charge violated Art. I, sec. 23 of the state Constitution because it "put the defendant on trial for an offense additional to that named in the bill of indictment" and ordered a new trial. *Id.* at 43, 432 S.E.2d at 148; *see also State v. Turner*, 98 N.C. App. 442, 448, 391 S.E.2d 524, 527 (1990) (explaining that while the State's evidence of conspiracy supported "the trial court's instruction . . . the indictment does not[,]" and, as a result, "award[ing] defendant a new trial on the conspiracy charge.").

Recently, this Court in *State v. Pringle*, 204 N.C. App. 562, 694 S.E.2d 505 (2010) explained,

> "[i]t is well established that where an indictment charging a defendant with conspiracy names specific individuals

with whom the defendant is alleged to have conspired and the evidence at trial shows the defendant may have conspired with persons other than those named in the indictment, it is error for the trial court to instruct the jury that it may find the defendant guilty of conspiracy based upon an agreement with persons not named in the indictment."

*Id.* at 566, 694 S.E.2d at 507 (citing to *Mickey*, 207 N.C. at 610-11, 178 S.E. at 221-22, and *Minter*, 111 N.C. App. at 42-43, 432 S.E.2d at 148).

However, a trial court does not err when it fails to name in the jury instruction the specific individuals named in an indictment, *if* the indictment, evidence, and instructions are in accord. *Id.* at 566-67, 694 S.E.2d at 508. In *Pringle*, the defendant was indicted on the charge of conspiracy to commit robbery with "Jimon Dollard and another unidentified male . . . ." *Id.* at 567, 694 S.E.2d at 508. During the jury charge, the trial court instructed the jury that it could find the defendant guilty if it found that the defendant agreed "with at least one other person to commit robbery . . . ." *Id.* at 565, 694 S.E.2d at 507. The evidence at trial tended to show that the defendant conspired with Dollard and one other man, and this Court explained that "during jury instructions the trial court need not specifically name the individuals with whom defendant was alleged to have conspired so long as the instruction comports with the material allegations in the indictment and the evidence presented at trial." *Id.* at 566, 694 S.E.2d at 508. *Pringle* reaffirmed *Mickey* and *Minter*, explaining that in those cases the evidence at trial tended to show that the defendant may have conspired with other individuals not named in the indictment; thus, the indictment,

17

evidence, and jury instruction were not "in accord" and the trial courts in *Mickey* and *Minter* erred in delivering the jury instructions. *Pringle*, 204 N.C. App. at 566-67, 694 S.E.2d at 508.

Here, as in *Minter*, Defendant was indicted for conspiracy to commit first-degree murder with a single named co-conspirator—Carlos Manzanares. At trial, however, the State provided evidence that Defendant conspired with two people: Carlos and another unidentified male.

The State first introduced Officer Terry Weaver with the Charlotte Mecklenburg Police Department, who testified that he had been dispatched to the scene and was the first officer to interact with Maria. Upon his arrival, Weaver spoke with Maria and had Maria draft a written statement. Maria told Weaver that "she was in the apartment with her child, . . . and the next thing you know, a Hispanic female came upstairs, along with two other Hispanic males. One was carrying a machete. Another was carrying a hammer, and they then began to assault [Roberto]." Weaver then read Maria's written statement to the jury, which said, "[Defendant] came in the room saying, all right mother f[***]er I'm going to f[**]k you up. . . . [T]hen the other two guys came in and started . . . hitting [Roberto] . . . ."

The State next called Maria to testify and asked her to explain who came into the bedroom on the night of the assault; Maria said "[Defendant] with two other men." When asked whether the men had anything with them, Maria replied "a hammer. . . .

18

[Defendant] had a machete." Maria explained that "[Defendant] threw the machete at [Roberto] . . . and he tried to defend himself, and that's when the other two men came in and started hitting him, kicking him[,]" and that "one of them took [the machete] from [Defendant] to hit Roberto in the head with it." "[The guys] hit him. They kicked him. They hit him in the head with the machete and with the hammer." Maria then testified that one of the two men—"the one that we don't know anything about,"—ran away from the apartment with the machete. When asked whether she ever again saw the two men who came with Defendant to the apartment, Maria answered "No, I haven't seen them again." Maria then positively identified a photo of Carlos, explaining that "[h]e's one of the guys who attacked Roberto." The State asked Maria whether Carlos was "the guy who stayed? Or is this the guy who left with the machete?" Maria replied that Carlos was "[t]he one that stayed."

Additionally, Maria's handwritten statement, made on the night of the attack, along with witness testimony and a recording of Maria's 911 phone call, is substantial evidence that Defendant conspired with two men on the night of the attack.

Because the indictment specifically named only Carlos as Defendant's co-conspirator, but the evidence presented at trial supported a finding that Defendant conspired with Carlos and another unidentified male, the trial court erred when it instructed the jury as follows:

> The defendant has been charged with conspiracy to commit murder. For you to find the defendant guilty of this offense,

> the State must prove three things beyond a reasonable doubt. First; that the defendant *and at least one other person* entered into an agreement. Second; that the agreement was to commit murder. Murder is the unlawful killing of another with malice. And third; that the defendant *and at least one other person* intended that the agreement be carried out at the time it was made. The State is not required to prove that the murder was committed. If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant conspired with another to commit murder, and that the defendant *and at least one other person* intended at that time that the murder be committed, it would be your duty to return a verdict of guilty. If you do not so find, or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

(emphasis added). This instruction was not "in accord," with both the indictment and evidence presented at trial, and thus the trial court's instruction was error. *Pringle*, 204 N.C. App. at 566-67, 694 S.E.2d at 508.

Moreover, the trial court's error was prejudicial. Because the trial court's instruction put Defendant "on trial for an offense additional to that named in the bill of indictment[,]" it violated Defendant's right to be informed of the accusation against her and permitted the jury to convict her upon a theory unsupported by the indictment. *Id.* at 567, 694 S.E.2d at 508; N.C. Const. Art. I, sec. 23; *see also Minter*, 111 N.C. App. at 42-43, 432 S.E.2d at 148. This type of error has long been held to be plain error by our Supreme Court, which explained that "it would be difficult to say that permitting a jury to convict a defendant on a theory not legally available to the state because it is not charged in the indictment or not supported by the evidence

20

is not plain error even under the stringent test required to invoke that doctrine." *State v. Tucker*, 317 N.C. 532, 540, 346 S.E.2d 417, 422 (1986); *see id.* at 537-38, 346 S.E.2d at 420 (explaining that "[a]lthough the state's evidence supported [the trial court's] instruction, the indictment does not. It is a well-established rule in this jurisdiction that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment." (citations omitted)); *see also Turner*, 98 N.C. App. at 448, 391 S.E.2d at 527 ("[W]e believe that the State's evidence does support the trial court's instruction; however, the indictment does not. Consequently we must award defendant a new trial on the conspiracy charge.").

Because the trial court's instructional error permitted the jury to convict Defendant on a theory not legally available to the State, the erroneous instruction was grave error which amounted to a denial of Defendant's fundamental right to be informed of the accusations against him, N.C. Const. Art. I, sec. 23, and thus the trial court plainly erred its jury instruction on the charge of conspiracy to commit first-degree murder. *Odom*, 307 N.C. at 660, 300 S.E.2d at 378. Moreover, we have examined the charge as a whole to determine whether the error was cured, and cannot conclude that it was. *Minter*, 111 N.C. App. at 43, 432 S.E.2d at 148; *Mickey*, 207 N.C. at 609, 178 S.E. at 221. Accordingly, we order a new trial on the conspiracy to commit first-degree murder charge.

*3. Testimonial Evidence*

We next address Defendant's contention that the trial court plainly erred by admitting hearsay evidence that violated Defendant's right to confrontation.

Defendant acknowledges her failure to object at trial to the admission of Sergeant Allison Rooks' testimony and, pursuant to N.C. R. App. P. 10(a)(4), specifically argues on appeal that the trial court's admission of Rooks' testimony constitutes plain error. "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993) (citation omitted).

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2018). "The Confrontation Clause of the Sixth Amendment bars admission of testimonial evidence unless the declarant is unavailable to testify and the accused has had a prior opportunity to cross-examine the declarant." *State v. Locklear*, 363 N.C. 438, 452, 681 S.E.2d 293, 304 (2009) (citations omitted). However, "admission of nonhearsay raises no Confrontation Clause concerns." *State v. Gainey*, 355 N.C. 73, 87, 558 S.E.2d 463, 473 (2002) (internal quotation marks and citations omitted).

Defendant challenges the following exchange between the State and Rooks:

> [State]: You interviewed, you said, Maria Navarro, Luis Martinez and Carlos Manzanares, and Fabiola Chavez. In your interview of Ms. Navarro and Mr. Martinez and Mr. Manzanares, was -- did you receive any conflicting information from those three individuals?
>
> [Rooks]: No. As far as who the other defendant was? No.

Defendant argues that Rooks' response was a testimonial statement which was used as an "obvious substitute for live testimony" of a codefendant, and its admission violated Defendant's right to confront her witnesses and ask any clarifying questions. Defendant further argues that Rooks' response to the State's question was "in effect that Martinez and Manzanares told [Rooks] that it was Fabiola Chavez who entered the bedroom with Manzanares and the other man." We find no merit in Defendant's claims.

Rooks' response contained no statements from Maria, Carlos, or Luis Martinez, and certainly no statements that were used to prove the truth of the matter asserted—the identity of the other defendant. Rooks' response that there was no conflict between the three witnesses could mean that all three witnesses said the same thing; however, it could also mean that they said nothing at all about the identity of the other defendant. As Rooks' testimony did not contain a statement used to prove the truth of the matter asserted, the testimony was not hearsay and its admission "raises no Confrontation Clause concerns." *Gainey*, 355 N.C. at 87, 558 S.E.2d at 473 (internal quotation marks and citations omitted).

23

Even assuming arguendo that Rooks' response was hearsay and improperly admitted at trial, the error did not have a probable impact on the jury's finding of guilt. Aside from Rooks' testimony, there was sufficient evidence of Defendant's guilt: Maria testified for the State and provided an eyewitness account of who attacked her on the night of the offense, and she identified both Defendant and Carlos as two of the perpetrators. Maria's handwritten statement, made on the night of the attack, explicitly named Defendant as one of the perpetrators. Additionally, Officer Weaver testified that Maria told him on the night of the attack that Defendant was one of the people who assaulted her and Roberto and attempted to assault her baby.

Rooks' response was made in passing, and there was no emphasis or follow up questions by the State. *See State v. Stroud*, 252 N.C. App. 200, 215, 797 S.E.2d 34, 45 (2017) (the "passing nature of the[] statements" and "the lack of emphasis or detailed discussion of the[] comments by the prosecutor" supported the conclusion that the admission of the testimony was not plain error). Therefore, because Rooks' testimony was not hearsay, the trial court did not err by allowing it into evidence. Even assuming arguendo that the trial court erred in allowing the testimony into evidence, Defendant can show no prejudice as there was other, sufficient evidence of her guilt. However, as we determine that the trial court did not err, it did not plainly err, and Defendant's argument to the contrary is overruled. *See State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468 (1986).

### III.  Conclusion

As there was sufficient evidence to support the charge of conspiracy to commit first-degree murder, Defendant has failed to show that her attorney's failure to move to dismiss prejudiced Defendant.  Moreover, as Rooks' testimony was not hearsay, the trial court did not err in allowing the testimony into evidence.  However, because the trial court plainly erred in the delivery of jury instructions on the conspiracy to commit first-degree murder charge, we vacate the judgment entered upon the verdict of guilty of conspiracy to commit first-degree murder and order a new trial on that charge.

NO ERROR IN PART, VACATED AND NEW TRIAL IN PART, AND REMANDED.

Judge BROOK concurs.

Judge TYSON concurs in part and dissents in part per separate opinion.

TYSON, Judge, concurring in part and dissenting in part.

Sufficient evidence supports the jury's conviction of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant has failed to show his attorney's failure to move to dismiss was prejudicial, or that he received ineffective assistance of counsel.

Sergeant Rooks' testimony was not hearsay. The trial court did not err by allowing the testimony into evidence. There is no error in the jury's verdicts or the judgments entered thereon for the attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury charges. I fully concur with the majority's opinion in those conclusions of no error.

The transcript and record show Defendant's trial counsel actively engaged in the pre-trial jury charge conference and requested an instruction on mere presence for the conspiracy charge, which the trial court included in the final jury's instructions. Defendant's counsel reviewed and affirmatively acknowledged the applicability of the trial court's proposed instructions. After the instructions were given, Defendant's counsel affirmatively accepted the instructions as given. There is no basis for this Court to invoke plain error to review any purported prejudice in the unobjected-to and affirmatively accepted jury instructions.

Even were plain error review available to Defendant, as the majority's opinion asserts, Defendant failed to and cannot show any prejudice to be awarded a new trial under any standard of appellate review. Overwhelming evidence of Defendant's guilt

overcomes any prejudice under either preserved error or plain error review. The majority's opinion fails to require Defendant to demonstrate any prejudice in light of the overwhelming evidence of her guilt and awards a new trial on the conspiracy to commit first-degree murder charge despite this failure.

Presuming error or even plain error, Defendant also cannot demonstrate prejudice in the instruction on conspiracy to commit first-degree murder to set aside the jury's verdict, reverse the judgment entered thereon, and be awarded a new trial. I concur in part to sustain Defendant's other convictions and respectfully dissent in part from awarding Defendant a new trial on the conspiracy indictment.

## I. Background

Defendant's counsel and the trial court engaged in the following exchange during the charge conference:

> [Defendant's counsel]: And Your Honor, I believe under *conspiracy* there's mere presence. I want that to be read as well.
>
> The Court: Do you have the number for that [Pattern Jury Instruction]?
>
> [Defendant's counsel]: No. It should be under conspiracy. If you read the *conspiracy* charge, there's a set that says that, however mere presence at the crime scene, even with knowledge of the crime- - I have it. I'll bring it after lunch. (emphasis supplied)

The record is silent on whether Defendant's counsel provided the trial court with the promised draft of jury instructions on mere presence in relation to the

2

conspiracy charge. Following the morning charge conference, the trial court again met with trial counsel and read aloud the final proposed list, by the number of the proposed pattern jury instructions, he intended to give.

Defendant's counsel voiced no concerns after being asked by the trial judge if any other proposed instructions needed to be included or altered. Once the jury had left the courtroom following their charge, the following exchange took place:

> The Court: Okay for the record, any comments, concern, corrections from either side for the charges?
>
> [Defendant's Counsel]: No, Your Honor.
>
> [The State]: No, Your Honor.

Defendant failed to object to the instruction when given to the jury to preserve any issue for appeal. Defendant now seeks to invalidate the jury instruction on and his conviction for conspiracy to commit first-degree murder. His counsel was actively involved at the charge conferences, failed to object then or when instruction was given to the jury, and failed to correct or object when given another opportunity. Defendant's counsel expressly consented to the jury instructions as given.

## II. Invited Error

"[A] defendant who invites error has waived his right to all appellate review concerning the invited error, *including plain error review.*" *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001) (emphasis supplied). North Carolina's statutes provide: "A defendant is not prejudiced by the granting of relief which he has

3

sought or by error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c) (2019).

Here, Defendant's counsel participated in, made recommendations, and proposed changes to the conspiracy to commit first-degree murder jury instruction during the charge conference. Defendant's counsel never made additional requests nor voiced any objection regarding the jury instructions proposed after he was specifically asked. Defendant's counsel also failed to object when the instructions were given. Defendant was provided the further opportunity to object or correct the instructions and expressly agreed to the instruction as given.

Defendant's failure to object during the charge conference or when the instructions were given to the jury along with express agreement to those given constitutes invited error and waives any right to appellate review concerning the invited error, "*including plain error review.*" *Barber*, 147 N.C. App. at 74, 554 S.E.2d at 416 (emphasis supplied). Defendant's counsel's requests and active participation in the formulation of the final instruction during the charge conference forecloses appellate review. *Id.*

Our Supreme Court in *State v. White*, 349 N.C. 535, 570, 508 S.E.2d 253, 275 (1998), examined a defendant's counsel's involvement in jury instructions in a death penalty case. The Court held:

> Here, defense counsel did not submit any proposed instructions in writing. Counsel also did not object when

4

given the opportunity either at the charge conference or after the charge had been given. In fact, defense counsel affirmatively approved the instructions during the charge conference. Where a defendant tells the trial court that he has no objection to an instruction, he will not be heard to complain on appeal.

*Id.* (citing *State v. Wilkinson*, 344 N.C. 198, 213, 474 S.E.2d 375, 396 (1996)).

The majority's opinion cites this Court's opinion in *State v. Harding*, 258 N.C. App. 306, 813 S.E.2d 254 (2018), as contrary to this holding. Presuming a conflict exists between an opinion from this Court and one from our Supreme Court, we are bound to follow the Supreme Court's opinion. *Mahoney v. Ronnie's Road Service*, 122 N.C. App. 150, 153, 468 S.E.2d 279, 281 (1996), *aff'd per curiam*, 345 N.C. 631, 481 S.E.2d 85 (1997). Defendant invited any asserted error and waived plain review. *See White*, 349 N.C. at 570, 508 S.E.2d at 275.

### III. Plain Error Analysis

Even if the notion that appellate or plain error review is not foreclosed due to Defendant's invited errors and is either available or proper, Defendant does not and cannot show "that the erroneous jury instruction was a fundamental error—that the error had a probable impact on the jury verdict" and was so prejudicial to be awarded a new trial. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).

Defendant failed to meet her burden of showing her asserted error should be reviewed for plain error. Even presuming plain error review, she cannot demonstrate any prejudice, in light of overwhelming evidence of her guilt. The majority's opinion

of *per se* error ignores the overwhelming and uncontroverted evidence of Defendant's guilt and omits <u>any</u> analysis or conclusion of prejudice or evidence of her guilt to award a new trial.

Their opinion asserts, *ipse dixit,* the un-objected to and unpreserved plain error had a probable impact on the jury's finding of guilt, and *de facto* holds the trial court plainly erred, which *per se* compels an award of a new trial. This assertion is unprecedented and elevates an unchallenged and unpreserved plain error remedy without an analysis of the overwhelming evidence of Defendant's guilt or prejudice above appellate review of preserved constitutional errors.

Even during appellate review of preserved constitutional errors employing harmless error review, no error is so *per se* prejudicial to compel a new trial without further analysis of whether the error was harmless beyond a reasonable doubt or prejudicial. *See State v. Malachi,* 371 N.C. 719, 738, 821 S.E.2d 407, 421 (2018); *State v. Veney,* __ N.C. App. __, __, 817 S.E.2d 114, 118, *disc. review denied,* 371 N.C. 787, 821 S.E.2d 169 (2018).

We all agree the trial court properly instructed the jury on the elements of attempted first-degree murder. The jury properly convicted Defendant of that offense, which we also agree was without error. The only additional element necessary to convict Defendant of conspiracy to commit first-degree murder was that

she entered into an agreement to do so with a co-conspirator. *State v. Crowe*, 188 N.C. App. 765, 771, 656 S.E.2d 688, 693 (2008).

The majority's opinion agrees that: "This testimonial evidence supports that Defendant and Carlos entered into an agreement to commit murder of Roberto." The majority's opinion later correctly states: "[T]here was substantial evidence of a conspiracy between Defendant and Carlos to commit murder of Roberto."

The evidence against Defendant is overwhelming to overcome any asserted prejudice under unpreserved plain error review or even harmless error review. *See State v. Castaneda*, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009) ("an error in jury instructions is prejudicial and requires a new trial *only if* there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises" (emphasis supplied) (citations and quotation marks omitted).

The record contains explicit and unchallenged testimony, which the majority's opinion acknowledges, of the conspiracy between Defendant and Carlos Manzanares and of their coordinated attack to commit the first-degree murder of Roberto. *See State v. Lamb*, 342 N.C. 151, 463 S.E.2d 189 (1995). Defendant demonstrated no prejudice in her conspiracy conviction.

A. *State v. Tucker*

The majority's opinion does not complete a prejudice analysis, holding "[t]his type of error has long been held to be plain error by our Supreme Court." In support of this assertion, the majority's opinion cites *State v. Tucker*, 317 N.C. 532, 540, 346 S.E.2d 417, 422 (1986). Even if their assertion of error is presumed, our Supreme Court in *Tucker* conducted a prejudice analysis of the probable impact of the "plain error" upon the jury's verdict, holding: "In light of the highly conflicting evidence in the instant kidnapping case on the unlawful removal and restraint issues, we think the instructional error might have . . . tilted the scales and caused the jury to reach its verdict convicting the defendant." *Id.* (quotations omitted).

Unlike in *Tucker*, the uncontroverted evidence of Defendant's guilt is more than enough to overcome any asserted prejudice, even under the notion that the purported error was not invited and plain error review is available and proper. *See id. Tucker* does not support awarding Defendant a new trial on the conspiracy charge.

### B. *State v. Pringle*

The majority's opinion cites *State v. Pringle* and states the "instruction was not 'in accord,' with both the indictment and evidence presented at trial, and thus the trial court's instruction was error." *State v. Pringle*, 204 N.C. App. 562, 566-67, 694 S.E.2d 505, 508 (2010). In *Pringle*, the indictment alleged the defendant had "conspired with 'Jimon Dollard and another unidentified male' and the trial court instructed the jury that it could find defendant guilty of conspiracy if the jury found

8

defendant conspired with 'at least one other person.'" *Pringle*, 204 N.C. App. at 567, 694 S.E.2d at 508.

The evidence at trial in *Pringle* tended to show the "defendant and two other men entered into a conspiracy to commit robbery with a dangerous weapon. One of the other men was specifically identified by the testifying officers as 'Jimon Dollard,' the second suspect arrested by officers after they pursued the three men seen robbing the gas station. The third man evaded capture and was never identified." *Id.*

The ultimate conclusion this Court reached in *Pringle* was that the defendant had not demonstrated any reversible prejudice and there was no error in the trial court's instruction or the jury's conviction. *Id.* "[The] instruction was in accord with the material allegations in the indictment and the evidence presented at trial. Consequently, we find no error, much less plain error, in the trial court's instruction." *Id.* *Pringle* does not support awarding Defendant a new trial on the conspiracy charge.

## C. *State v. Lawrence*

The proper legal conclusion in this case, presuming plain error review is available and proper, mirrors the analysis our Supreme Court conducted in *State v. Lawrence*:

> In light of the *overwhelming and uncontroverted evidence*, defendant cannot show that, absent the error, the jury probably would have returned a different verdict. Thus, he *cannot show the prejudicial effect necessary to establish*

> *that the error was a fundamental error.* In addition, the error in no way seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Lawrence*, 365 N.C. at 519, 723 S.E.2d at 335 (emphasis supplied).

Defendant's conspiracy conviction under *any* legitimate analysis is properly left undisturbed. In the cases of *Lawrence*, *Tucker*, and *Pringle*, our Supreme Court and this Court conducted analyses of the probable impact of the asserted error on the jury's verdict, and the other "overwhelming and uncontroverted evidence" of guilt, a prejudice analysis that is *wholly omitted* by the majority's opinion. *Lawrence*, 365 N.C. at 519, 723 S.E.2d at 335; *see also Tucker*, 317 N.C. at 540, 346 S.E.2d at 422, *Pringle*, 204 N.C. App. at 567, 694 S.E.2d at 508.

The properly admitted and unchallenged evidence against Defendant is "overwhelming and uncontroverted" to overcome any asserted and unpreserved prejudice under plain error, or even harmless error review. *Lawrence*, 365 N.C. at 519. The majority's opinion errs by disregarding long established and binding Supreme Court precedents as well as this Court's procedures to reach its conclusion, without any analysis weighing the considerable evidence of Defendant's guilt against any probable impact of plain error on the jury's verdict. The majority's opinion cites no precedent to award a new trial in the absence of prejudice. The only rational and legitimate conclusion from this absence of authority is none exists.

## IV. Conclusion

Defendant received a fair trial, free from prejudicial errors she preserved and argued on all convictions. I concur with the majority's opinion to find no error in Defendant's attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury convictions.

Defendant is not entitled to a new trial on conspiracy to commit first-degree murder. Any purported error was invited and waived. *White*, 349 N.C. at 570, 508 S.E.2d at 275. Even if Defendant did not invite the error, Defendant wholly failed and cannot carry her burden to show any prejudice under the standard of review of plain error to warrant a new trial.

"[O]verwhelming and uncontroverted evidence" of Defendant's guilt exists in the record to overcome any asserted prejudice. *Lawrence*, 365 N.C. at 519. Defendant failed to show plain error in the jury's verdict of conspiracy to commit first-degree murder or in the judgment entered thereon.

Presuming plain error analysis is appropriate here, there is no showing by Defendant or analysis by the majority of prejudice to award a new trial. The evidence of her guilt is overwhelming. *Lawrence*, 365 N.C. at 519, 723 S.E.2d at 335; *see also Tucker*, 317 N.C. at 540, 346 S.E.2d at 422, *Pringle*, 204 N.C. App. at 567, 694 S.E.2d at 508. There is no error in the jury's verdicts and the judgment entered thereon. I respectfully dissent from awarding a new trial to Defendant for conspiracy to commit first-degree murder under plain error review.